UNITED STATES, Appellee,

v.

Sergeant Israel B. POLLARD,
238–08–8827, United States
Army, Appellant.

ACMR 9003250.

U.S. Army Court of Military Review.

1 April 1992.

---

For Appellant: Captain James M. Heaton, JAGC, Captain Mark L. Toole, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before De GIULIO, HAESSIG, and ARKOW, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a general court-martial composed of officer and enlisted

**1010**

members. He was arraigned on two specifications of sodomy with a thirteen-year-old female child and one specification of indecent assault upon a six-year-old female child. Contrary to his pleas, he was found guilty of one specification of indecent acts, as a lesser offense of one of the sodomy specifications, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ].[1] He was sentenced to a bad-conduct discharge and confinement for two years. The convening authority approved the sentence.

Appellant assigns six errors which we find are without merit. This Court, however, specified the issue of whether the military judge erred by taking judicial notice during sentencing of facts which are the administrative consequences of a sentence. We find error as to the specified issue and will reassess the sentence.

While Ann, a thirteen-year-old girl, was visiting her thirteen-year-old friend, M, M's stepfather called M into his bedroom. She returned after twenty or thirty minutes. Ann noted that M "wasn't normal . . . there was a look on her face . . . her eyes were real watery" and "she bursted out crying." Ann asked M what was wrong. M replied that her stepfather "had been sexually messing with her." They left the house, and eventually M told Coach H, a friend of Ann and her family, that appellant had been "[t]ouching, licking her where he had no business, and things such as that." At the request of Coach H, M wrote him a letter. In the letter, M indicated that appellant would, "touch my upper part stick his fingers in my lower part and lick it." Coach H reported the allegations to the local police. As a result of the report, M was interviewed by Officer Pamela Jones,

a civilian police officer. Because M had reported that her nine-year-old brother, J, and her six-year-old sister, N, were present during the abuse, they were also interviewed. Miss Lori Mason from the Texas Department of Human Services was present but did not actively participate in the interviews.

During the interviews, open-ended questions were used rather than leading questions. From the evidence, it appears that Mrs. Pollard, appellant's wife, had threatened or attempted to coerce J and N into not speaking or cooperating during the interviews. After being told by M that it was "Okay to tell the truth," N, the six-year-old, told the investigator that she was present when appellant gave M "bad touches," which included placing his mouth on her "pussy." She used anatomically correct dolls to demonstrate the acts.

J, the nine-year-old brother, was reluctant to talk because his mother had told him that to do so would cause him to be placed in a foster home and that he would never go back home. Finally, in his sworn statement, J stated that he saw M lying on her back with her panties pulled down. Appellant was lying on the couch licking M's "private." This was sometime after Easter.[2] On a later date, J observed appellant again licking M's "private" in the bedroom. He told his mother of the incident, and she spanked M for letting appellant perform these acts. Appellant also had to sleep on the couch for two days before he was permitted to sleep with J's mother again.

In a sworn statement on 30 May 1990, M told Officer Jones that sometime around spring break appellant began to fondle her breasts. The last time appellant fondled M

1. The indecent assault was dismissed on motion by the government before pleas. A motion for a finding of not guilty to the two offenses of sodomy was granted by the military judge, leaving two specifications of indecent acts. The court found appellant not guilty of the first specification, indecent acts during the period 15 March to 15 May 1990, but guilty of the second specification, indecent acts on 19 May 1990. The promulgating order does not reflect appellant was arraigned on the sodomy charges. It merely reflects that appellant pled not guilty to the two specifications of indecent acts, was

found not guilty of the first, but guilty of the second. Staff Judge Advocates should insure that promulgating orders set forth the information required by Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1114(c) [hereinafter R.C.M.]. This is an example of the carelessness which has become common in the processing of courts-martial.

2. At trial the military judge took judicial notice that Easter was 15 April 1990.

was on 19 May 1990, when he fondled her breasts, put his mouth on her "cat," and sucked and licked it.[3] She stated that her brother, J, and sister, N, saw appellant perform these acts. She eventually told Ann of these acts and reported it to Coach H who had her write him a letter about it.

Subsequently, M, J, and N recanted their statements. In a sworn statement to Officer Jones on 4 June 1990, M stated she lied about the sexual assault. She stated that a friend, Kim, told her to lie about it. Further, at the Article 32 investigation M stated that she gave the written statement to Coach H as an essay.[4]

At trial M denied any sexual acts by appellant. She stated that Ann told her to lie. She testified that J, her nine-year-old brother, suggested the plan that they falsely report that appellant sexually abused her. In another part of her testimony, she stated she falsely reported sexual abuse so she could return to North Carolina to live with her great-grandmother.

Over timely objection, the military judge admitted N's and J's statements under the residual hearsay exception to the hearsay rule. *See* Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 803(24) [hereinafter Mil.R.Evid.]. He found M's statement inadmissible under the residual hearsay exception.[5] He did admit M's statement as a prior inconsistent statement for purposes of impeachment after M testified.

### I.

Appellant alleges that the military judge erred in admitting the hearsay statements of J and N under the residual hearsay exception, Mil.R.Evid. 803(24), because the statements possessed neither the particularized guarantees of trustworthiness nor the adequate indicia of reliability required for admissibility.

The constitutional requirement of indicia of reliability and the residual hearsay requirement of equivalent circumstances of trustworthiness are closely related and construed to be equivalent. *United States v. Hines,* 23 M.J. 125, 134 (C.M.A.1986). In determining particularized guarantees of trustworthiness, the rules announced in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), are controlling rather than those utilized in *Hines. United States v. Stivers,* 33 M.J. 715 (A.C.M.R.1991); *United States v. Moreno,* 31 M.J. 935, 939 (A.C.M.R.1990), *review granted,* 33 M.J. 483 (C.M.A.1991). In *Idaho v. Wright,* the Supreme Court determined that particularized guarantees of trustworthiness must be shown from the totality of circumstances surrounding the making of the statement and that render the declarant particularly worthy of belief. Some of the factors to be considered in determining whether a statement is reliable are: spontaneity and consistent repetition of the statement, the mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. *Id.* "[T]he unifying principle is whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* at 3153.

In the case before us, the military judge entered findings of fact as to the particularized guarantees of trustworthiness of each child's statement.[6] He found that the interviews were conducted without notice. The children understood the "good" and "bad touches." Open-ended and non-leading questions were asked and truthfulness was continually stressed.

---

**3.** M used the term "cat" in referring to the vagina.

**4.** Although he was called coach, this individual was not a teacher or coach of M.

**5.** We are at a loss as to the distinctions of this ruling for we find many of the circumstances similar in the taking of the three statements by Officer Jones. Although we believe the particularized guarantees of trustworthiness in all three statements make them admissible, we are bound by the rulings of the military judge in this respect. *See United States v. Crawford,* 30 C.M.R. 203 (C.M.A.1961).

**6.** Both J and N testified in out-of-court sessions conducted to determine admissibility of their statements. Their availability is not an issue before this Court. *See United States v. Quick,* 26 M.J. 460, 462 (C.M.A.1988).

As to J, the military judge found that the necessity to tell the truth was understood by J. He made the statement even though his mother had threatened him. Thus, the military judge found that J's statement was made against his own interest. He found J's emotional state was demonstrated by his hard crying. When J told of the abuse he seemed to be reliving the event. The military judge found J's painstaking review of his statement indicated his meticulous attention to detail and his habit to be precise.

As to N, the military judge found that, initially, she showed fear and reluctance to talk. She indicated someone didn't want her to talk. The military judge found that this six-year-old child's "tender years and exhibited state of maturity, when compared with the subject matter and detail of her out-of-court statement, serve as an exceptionally strong circumstantial guarantee of trustworthiness." He found that a six-year-old would have to witness such an event to repeat it with such accuracy.[7] The military judge noted the use of sexually explicit terms by N. He noted that she demonstrated appellant's sordid deeds with M by use of anatomically correct dolls. Additionally, during the taking of the statements, there was no indication of rehearsed or planned responses.

The military judge found sufficient particularized guarantees of trustworthiness to make the statements of J and N admissible under the residual hearsay exception. We agree. We find that the child witnesses, J and N, were particularly likely to be telling the truth when these statements were made. The military judge properly admitted the statements of J and N.

## II.

■ Appellant further alleges that the evidence is insufficient because the only probative government evidence was a prior inconsistent statement which could not be considered for the truth of the matter contained within that statement.[8]

This assertion of error involves the statement of M to the police officer which was rejected under the residual hearsay rule. The statement was admitted as a prior inconsistent statement after M testified at trial that the sexual abuse did not occur. Appellant's argument is essentially that appellant was found not guilty of the offense for which the dates could be ascertained by the statements of J and N, indecent acts during the period 15 March to 15 May 1990. Appellant was found guilty of indecent acts on 19 May 1990, a date which can be only found in M's statement. Since M's statement could only be used for impeachment purposes and not for the truth of the matter, appellant contends there is no proper evidence upon which to base the finding of guilty.

■ Appellant is correct that M's prior inconsistent statement cannot be used to establish the date of the offense for it cannot be used for the truth of the matters stated therein. *See* Mil.R.Evid. 801(d)(1). He is incorrect, however, that the evidence is insufficient to establish the offense absent the testimony of M. The military judge instructed the court that the term "on or about" has "no mathematical certainty, such as plus or minus of 5 days, or 1 week, or anything of that nature" but that it "refers to a span of time that's near to the referenced time." Indeed, trial counsel argued that "on or about ... doesn't mean it has to have occurred on 19 May; it just has to have occurred sometime near that date."

---

7. Part of appellant's defense was that the children got their ideas from their surreptitious viewing of his sexually explicit videotapes. The military judge found the evidence of viewing the videotapes fell short of its aim and did not erode the persuasiveness of the statement.

8. Appellant also alleges that the government called M as a witness with the primary purpose of placing the prior inconsistent statement before the court, a practice which is prohibited,

citing *United States v. Hogan,* 763 F.2d 697 (5th Cir.1985). We note that M's age was established by her testimony. Age is one of the elements of the charged offenses. We further note that since M did not specifically admit *making* the prior inconsistent statement, introduction of the extrinsic evidence of the statement was proper. *See United States v. Button,* 34 M.J. 139 (C.M.A. 1992).

"On or about" are words of art in pleading which generally connote any time within a few weeks of the alleged date. *United States v. Brown*, 34 M.J. 105, 110 (C.M.A.1992). We are convinced that the specification is sufficient as to time so that, taken together with the evidence of record, it protects appellant from another trial for the same offense. *See United States v. Brown*, 16 C.M.R. 257 (C.M.A.1954).

Testing for legal sufficiency, considering the evidence in the light most favorable to the government, we find that a reasonable fact finder could have found all the essential elements of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We hold that the evidence is legally sufficient to support the findings of guilty.

Testing for factual sufficiency, we find beyond a reasonable doubt that appellant did, at Killeen, Texas, on or about 19 May 1990, commit an indecent act upon the body of M, as alleged. *See* UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). The evidence is factually sufficient to support the findings of guilty.

### III.

Appellant also alleges that the military judge erred in admitting hearsay evidence through the testimony of Ann. The prosecution offered this statement as an excited utterance under Mil.R.Evid. 803(2). In order for the statement to be an excited utterance, it must be spontaneous, excited or impulsive rather than a product of reflection or deliberation, the event must be startling, and the declarant must be under the stress of excitement caused by the event. *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A.1987). Here, M visited her stepfather's bedroom for twenty or thirty minutes. Although we do not know what transpired in the bedroom, the visit was sufficient to cause M not to be "normal" and to burst out crying. Her statement that appellant "had been sexually messing with her" was sufficiently spontaneous, excited or impulsive rather than the product of deliberation. The fact that Ann asked M what was wrong does not preclude its use under this exception to the hearsay rule. *See White v. Illinois*, —— U.S. ——, 112 S.Ct. 736, 739, 116 L.Ed.2d 848 (1992) (declarant asked what happened); *see also Arnold*, 25 M.J. at 131 (declarant's motive questioned for asking such a thing). We are convinced under the circumstances of this case that M's statement to Ann was indeed an excited utterance.

Assuming *arguendo* that it was error to admit this statement, we find the remaining evidence sufficient to convict appellant. We find the admission of the statement, if error, was harmless beyond a reasonable doubt. *See* UCMJ art. 59(a), 10 U.S.C. § 859(a); *United States v. Remai*, 19 M.J. 229 (C.M.A.1985).

### IV.

Appellant next alleges that the military judge abused his discretion by failing to grant a continuance after the government gave notice of intent to call an expert witness and appellant required additional time to effectively prepare his defense.

At 1545 on Friday, 30 November 1990, the prosecution gave notice that they intended to call a psychiatrist, an expert in child sexual abuse. On the morning of the trial, Monday, at 0830, 3 December 1990, appellant requested a continuance to interview the expert, stating the testimony would determine defense tactics and preparation for the case. Noting that the expert's testimony was in no way novel or unique, the military judge denied the motion for a continuance. He did give counsel time to interview the witness after direct examination.[9] After the interview, the defense counsel requested a three-day continuance or, at the very least, a continuance until the next day. The military judge granted a continuance until the next morning. The next morning, trial defense coun-

---

9. It should be noted that trial defense counsel refused to give an opening statement at the beginning of trial because of the failure to grant a continuance but reserved opening statement. An opening statement was made, however, at the beginning of the defense case.

sel stated that she was ready to cross-examine the witness and did so.

■ This Court recognizes that continuances should be granted liberally upon a showing of good cause. *United States v. Daniels*, 28 C.M.R. 276 (C.M.A.1959); *United States v. Johnson*, 33 M.J. 855 (A.C.M.R.1991). A military judge's denial of a motion for a continuance will not be reversed absent a clear abuse of discretion. *United States v. Menoken*, 14 M.J. 10 (C.M.A.1982); *Johnson*, 33 M.J. at 857.

In the case before us, appellant was given time to interview the witness and an overnight delay in the trial to prepare for cross-examination. Under the circumstances of this case, we hold that the military judge did not abuse his discretion in denying the requested three-day continuance.

### V.

■ Finally, appellant asserts that the staff judge advocate erroneously failed to reply to the legal error asserted by appellant in his post-trial submission.

After the staff judge advocate submitted his recommendation that the adjudged sentence be approved, appellant responded with a petition for clemency under R.C.M. 1105. The submission included a presentation that could alternatively be interpreted as mere comment on the evidence or as an allegation that the evidence was legally and factually insufficient to support the findings of guilty. It also alleged as legal error that the military judge improperly admitted the statements of J and N. In an addendum to the recommendation, the staff judge advocate referenced and attached appellant's submission. He stated in part, "I have specifically considered the reasons why relief should be extended in this case and I adhere to my previous recommendation."

R.C.M. 1106(d) requires the staff judge advocate to respond to any allegation of legal error. *United States v. Hill*, 27 M.J.

293 (C.M.A.1988). In the case before us, the question is whether the staff judge advocate's response was sufficient. Although not a response to be emulated, we believe that the addendum is sufficient. The implication of his adherence to the former recommendation is that he disagrees with appellant's allegation of error. Although we find no error, a better practice would be for staff judge advocates to make a simple statement of agreement or disagreement in their responses. *See Hill*, 27 M.J. at 297 (Judge Cox concurring).

### VI.

■ In addition to the error raised by appellant, this Court specified the issue of

WHETHER IT WAS PREJUDICIAL ERROR FOR THE MILITARY JUDGE, OVER DEFENSE OBJECTION, TO PERMIT THE GOVERNMENT TO PRESENT AS EVIDENCE IN AGGRAVATION (BY JUDICIAL NOTICE) THE FACT THAT THE DISCIPLINARY BARRACKS AND THE CORRECTIONAL BRIGADE HAVE A TREATMENT PROGRAM FOR CHILD SEX OFFENDERS AND THAT TO HAVE THE PROGRAMS AVAILABLE APPELLANT MUST BE SENTENCED TO CONFINEMENT FOR A PERIOD OF AT LEAST SIX MONTHS AND ONE DAY.[10]

Programs of treatment of child sex offenders are collateral administrative consequences of a sentence and, although may be presented in rebuttal, should not be presented in aggravation. *See United States v. Lapeer*, 28 M.J. 189 (C.M.A.1989); *United States v. Murphy*, 26 M.J. 454, 457 (C.M.A.1988); *United States v. Griffin*, 25 M.J. 423 (C.M.A.1988). Here, evidence of the programs was presented in aggravation. Thus, we conclude it was error for the military judge to admit this evidence. We will correct the error by reassessing the sentence.

---

**10.** It is noted that the trial counsel only asked for the court to take judicial notice of the programs. The military judge compounded the error by interjecting himself and adding the six-months-and-a-day requirement. Even if such information could have properly been presented to the court, we question its accuracy.

The allegations of error personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), only so much of the sentence is affirmed as provides for a bad-conduct discharge and confinement for eighteen months.

Judge HAESSIG and Judge ARKOW concur.