**UNITED STATES**

v.

**Master Sergeant Douglas C. HANSEN, FR564–90–8251 United States Air Force.**

**ACM 29328.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 April 1991.

Decided 25 Nov. 1992.

Appellate Counsel for the Appellant: Charles F. Peterson (argued), Colonel Jeffrey R. Owens, Major Mary C. Yastishock, Major Marilyn A. Gordon, and Captain Robert I. Smith.

Appellate Counsel for the United States: Captain Thomas E. Wand (argued), Colonel Richard L. Purdon, Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, and Major Paul H. Blackwell, Jr.

Before O'HAIR, SNYDER, and GRUNICK, Appellate Military Judges.

**602**

## OPINION OF THE COURT

SNYDER, Judge:

Contrary to his pleas, appellant stands convicted of rape, forcible sodomy, indecent acts upon the body of a minor female on divers occasions, and committing indecent acts with another, all involving his natural daughter, T.[1] He was also convicted of committing an indecent act upon the body of his other minor daughter, L. A general court-martial, which included enlisted members, sentenced appellant to a dishonorable discharge, 20 years confinement, and reduction to E-3.

Appellant avers 11 assignments of error. We do not find prejudicial error, but the state of the evidence leads us to modify the findings and sentence. We otherwise affirm the results.

## I. FACTS

In approximately 1979, at Mountain Home AFB, Idaho, when T was 8 or 9 years old, appellant began a course of sexual conduct with T that continued until she was 18 years old.[2] This conduct consisted of touching her vagina with his finger, having her observe him in the shower with an erection, and then progressed to daily fondling of her breasts, buttocks, and vaginal area, and cunnilingus. When appellant went to T's bedroom to commit his illicit acts, T would pretend to be asleep in an effort to deter appellant, but he either would shake her to awaken her, or go ahead and perform cunnilingus upon her. There was also one incident of appellant having T perform fellatio upon him when T was 9 years old. The act hurt T's jaw, and she was so repulsed by appellant breaking his promise not to ejaculate in her mouth that she told him she would not do that anymore. At the time of these events, T did not believe it was wrong to engage in

these activities with her father, and she obeyed his adjuration not to tell anyone.

During this sequence of events, appellant was also attempting to have sexual intercourse with T, but was unsuccessful in achieving full penetration due to her size and age. He even used a vibrator on the outside of her vaginal area to stimulate her, as well as providing her a rubber hot dog to insert into her vagina to also stimulate her and aid eventual penetration. Appellant performed digital penetration of T, and after his unsuccessful attempts at penetration with his penis, appellant would masturbate. During T's formative years, appellant taught T a game called "Peekaboo Peekayou." Whenever appellant said "peekaboo" to T, she showed him her bare chest. When he said "peekayou," she showed him her bare chest and vagina.

Appellant achieved full penetration when T was 13 years old. Thereafter, he had sexual intercourse with T on a continuous basis. As T grew older, appellant constantly asked her to perform sexual acts with and on him. When T said, "no," appellant went away, but kept returning and asking her until she relented. He never expressed anger, threatened her, or used physical force when she refused. However, there were occasions when appellant responded to her refusals by saying she was good for nothing. T testified this pattern continued until "either I gave in or it'd just keep going on." Appellant also had T watch pornographic movies with him.

During her early teens, T began to have misgivings about appellant's acts with her, but she still told no one. Further, as a result of her sex education classes at school, T began to have a fear of pregnancy, and she expressed those fears to appellant. He responded by wearing two condoms whenever he had intercourse with T, and he told her he had money saved for an abortion, if it became necessary. Appellant

---

1. In violation of Articles 121, 125, and 134, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 921, 925, and 934). Because the victim was over 16 years old at the time of the last offense, it was alleged in a separate specification as an indecent act with another.

2. The crucial date for the statute of limitations in this case was 13 November 1986 (Article 43, UCMJ, 10 U.S.C. § 843). All events occurring prior to 14 November 1986 were barred. However, over defense objection, this evidence was admitted under Mil.R.Evid. 404(b) and 403. That ruling is discussed *infra*.

also continued to perform cunnilingus on T. Throughout this period, appellant continued to fondle T's breast and vagina. T testified she did not tell anyone, not even her mother, because she thought they would be mad at her and her mother would yell at her.

T was 15 years old when appellant was reassigned to Davis–Monthan AFB, Arizona in 1987, the situs of his court-martial, and she turned 16 a couple months afterwards. While at Davis–Monthan, appellant would stick his head in the shower while T was showering, and would go to her room and watch her while she dressed. T would dry off and dress as hurriedly as she could with her back to him. The sexual acts between appellant and T continued. T recalled three instances of sexual intercourse with appellant while at Davis–Monthan AFB, the last occurring during her senior year in high school.

Until T departed home for the armed forces, when she was 18, appellant would have her watch him masturbate. Sometimes he would call her to the bathroom while he was masturbating there, and other times, he would ask her to watch him masturbate in the bathroom while she was in her room, which was directly across the hall from the bathroom. There were times when, while masturbating, appellant would say to T, "peekaboo," and she would show her breasts. After he finished, appellant would tell T, "thank you." During these years, appellant was also engaging in "tweaking" T, whereby he would pinch her breasts. Appellant would also grab and touch her buttocks.

Shortly after graduating from high school, T enlisted in the armed forces and left home. Because her specialty required a Top Secret security clearance, a background investigation (BI) was conducted. During the BI, one of her high school friends mentioned T had been sexually abused by her military father, and the investigative wheels started to turn, culminating in appellant's trial. Until her interview by investigators, T had never reported appellant to authorities.

## II. ADMISSIBILITY OF OTHER OFFENSES

Trial defense counsel made a Motion *In Limine* to exclude evidence of acts appellant may have committed on T, but were uncharged because they fell outside the statute of limitations. The bases for the motion were Mil.R.Evid. 404(b) and 403. Trial defense counsel averred the evidence did not meet any of the three criteria for admitting it. *See United States v. Reynolds,* 29 M.J. 105 (C.M.A.1989); *United States v. Ferguson,* 28 M.J. 104 (C.M.A. 1989); *United States v. Mirandes–Gonzalez,* 26 M.J. 411 (C.M.A.1988). The Government responded that the evidence in question, combined with expert testimony thereon, was offered to prove the charged sexual acts appellant committed with and upon T were without her consent. Specifically, the evidence was offered to prove constructive force.

After hearing argument, and applying the balancing test of Mil.R.Evid. 403, the trial judge admitted the evidence. Appellant asserts this ruling was error, claiming, essentially, the evidence was not of a nature which would make consent or the lack thereof more or less likely. We disagree with appellant's view of the ruling and hold the trial judge did not abuse his discretion in admitting the evidence.

It was evident that the core issue of contention at appellant's trial would be consent. The Government gave notice it would rely on the theory of constructive force, and the evidence was offered to demonstrate that, over the years, Appellant had deprived T of her will to resist his advances. Thus, the evidence clearly was offered for a reason other than to show appellant had a predisposition to commit the offenses charged. It revealed a pattern of similar methods and incidents, all with T, and contributed to the fact finders' ability to understand and weigh the evidence and decide the issue of consent. This rendered the evidence highly relevant. *United States v. Munoz,* 32 M.J. 359 (C.M.A.1991); *United States v. Castillo,* 29 M.J. 145 (C.M.A.1989).

We also agree with the trial judge that the probative value of the evidence far exceeded any prejudicial effect. "An accused is not immunized in such a situation against the Government's use of evidence of other misconduct because that other misconduct was especially flagrant and repugnant" (citations omitted). *United States v. Castillo*, 29 M.J. at 151. Further, the trial judge gave a proper limiting instruction to guide the members in the use and application of the evidence.

### III. CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME

■ Trial defense counsel also made a Motion *In Limine* to exclude the expert testimony of Dr. Rosenzweig on Child Sexual Abuse Accommodation Syndrome. Counsel averred the testimony was being offered solely on the truthfulness of T's testimony. The trial judge correctly denied the motion.

The expert testimony was offered to aid the fact finders' evaluation of T's testimony, especially with regards to the issue of whether she consented to the acts of her own free will, the recantation of her statement to investigators, and her claimed loss of memory. After explaining the Child Sexual Abuse Accommodation Syndrome and its dynamics, Dr. Rosenzweig applied them via an opinion based on a hypothetical question built upon T's testimony and her statement to investigators, as well as Dr. Rosenzweig's examination of T.

Dr. Rosenzweig was properly qualified as an expert in his field. His testimony addressed an area beyond the common knowledge and expertise of the fact finders and was helpful. Mil.R.Evid. 702; *United States v. Rhea*, 33 M.J. 413 (C.M.A.1991). Further, Dr. Rosenzweig's testimony properly focused on the traits and consistencies found among sex abuse victims and did not improperly vouch for T's credibility. *Rhea*, 33 M.J. at 424; *United States v. Palmer*, 33 M.J. 7 (C.M.A.1991); *United States v.*

*Arruza*, 26 M.J. 234 (C.M.A.1988) (Sullivan, J., concurring); *see also United States v. Suarez*, 35 M.J. 374 (C.M.A.1992). Further, the trial judge's instruction to the members on the proper use of expert testimony cautioned them that the hypothetical question on which his opinion was based assumed the truth and accuracy of the facts therein. The instruction served to remind the members they were not to abandon their fact finding role to the expert.[3]

### IV. ADMISSIBILITY UNDER MIL.R.EVID. 803(24)

■ As frequently is the case, by the time of trial, T was claiming lack of memory of the events which form the basis of the charges, as well as recanting much of her prior statement to investigators of the Air Force Office of Special Investigations (AFOSI). As a result, the Government offered her statement made to investigators for admission into evidence under Mil. R.Evid. 803(24). After hearing evidence and argument by counsel, the trial judge admitted the statement. We paraphrase his findings as they related to the requirements of Mil.R.Evid. 803(24) as follows:

(1) the accused's right to confrontation was protected by T's availability to testify under oath and to be cross-examined; (2) T's statement bore substantial indicia of reliability in that it is in writing, initialed and signed by her, given under circumstances which indicated the seriousness of the matter and necessity for truthfulness; (3) the circumstances of giving the statement were neither coercive, nor unduly suggestive, even considering the nature and status of T at the time she gave the statement; (4) many of the facts and circumstances of the statement are corroborated by other evidence in the case, including her own testimony and also interlock with ... the oral confession of the accused; (5) it is offered for proof of material facts which, due to the witness' lack of recall, are unavailable from other means; and (6) the pur-

---

3. Although we find the instruction sufficient, it could have been stronger. We are confident that, when instructing the members in this area, trial judges are now incorporating the guidance of the Court in *United States v. Rhea*, 33 M.J. 413, n. 7 (C.M.A.1991).

poses of the Military Rules of Evidence and the interests of justice would be served by the admission of the statement in evidence.

■ Mil.R.Evid. 803(24) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness.... A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will be best be served by admission of the statement into evidence....

Because T was available to testify, and did testify under oath, appellant's right of confrontation is not in issue, his assertion in his brief that T's lack of recall all but neutralized effective cross-examination notwithstanding. His *opportunity* to cross-examine was fully preserved. *See United States v. Gans,* 32 M.J. 412 (C.M.A.1991). Accordingly, we focus our review on the circumstantial guarantees of trustworthiness of T's statement and the necessity of its admission, for not every prior statement of a witness is admissible merely because the witness is present to testify. The statement must be both reliable *and* necessary. *United States v. Giambra* 33 M.J. 331, 334 (C.M.A.1991); *United States v. Guaglione,* 27 M.J. 268 (C.M.A.1988).

## A. CIRCUMSTANTIAL GUARANTEES OF TRUSTWORTHINESS

■ Our assessment of the trustworthiness of T's statement must begin with the fact it was made to investigators. Although statements made to investigators, including those made under oath, are not,

per se, unreliable, the circumstances surrounding such statements must be critically assessed for other supporting factors and whether subtle biases impacted the statement. *Guaglione,* 27 M.J. at 276; *United States v. Hines,* 23 M.J. 125 (C.M.A.1986). As did the trial judge, we also conclude that the fact T's prior statement was made to investigators does not detract from its reliability. Factors surrounding the making of T's statement which support a finding of trustworthiness, but not specifically noted by the trial judge are (1) when T was called for the interview, she had no inkling what the subject matter would be until she arrived for the interview; (2) after relating her oral statement to the investigators, it was immediately incorporated into a written statement via T's handwriting and signed under oath; (3) the investigators had not obtained any details from any other source; their only source for details was T, thus, they had no means by which to suggest answers to T (Appellant was interviewed at Davis–Monthan AFB at a later time by different investigators); (4) they used notes made while T was relating facts orally to refresh her memory while she was writing the statement, not suggestions based on other sources; (5) although at trial she disputed certain areas and claimed parts of her statement were made by the investigators, T never really disputed the substance and truthfulness of the statement (Her main dispute was a refusal to accept the legal consequences of some of appellant's acts);[4] (6) T also admitted the investigators had only attempted to have her quantify the times appellant committed the acts upon her, and did not try to suggest to her what to say.

## B. NECESSITY AND THE INTERESTS OF JUSTICE

In addition to possessing circumstantial guarantees of trustworthiness or reliability, T's statement also was necessary to the

---

**4.** For example, because he could not achieve full penetration, T said her statement was wrong in reflecting appellant had "sex" with her in her youthful years. She viewed that as "at- tempting to have sex," notwithstanding appellant having achieved the penetration sufficient to violate Article 120.

case and the interests of justice. In addition to claiming not to remember all the events provided in her statement, T admitted from the witness stand she just did not want to remember. At the time of trial, all the adverse consequences concomitant with child sexual abuse being discovered were impacting T's family. Her mother had been hospitalized for at least 2 weeks after learning some of the details, and T's sister, L, had left to live with her grandparents to avoid being removed from the home by local authorities. T testified that she felt at least partially responsible for these events. She expressed concern over the breakup of her family and her desire to see the family back together and for appellant to receive professional help. Under these circumstances, T was not exactly a friendly witness. It is not farfetched to infer she would have been even less friendly had she not been subject to the UCMJ at the time of trial.

Accordingly, the information contained in her statement was not available to the Government via her live testimony, thereby rendering admission of the statement necessary. T's statement was properly admitted. *Giambra*, 33 M.J. 331; *United States v. Powell*, 22 M.J. 141 (C.M.A.1986).[5]

■ Our review of the record convinces us the trial judge did not merely perform a mechanical application of Mil.R.Evid. 803(24), combined with an incantation that the statement was material, reliable, and necessary, but, instead, he applied the critical analysis and balancing essential to proper application of this rule of evidence. *Powell*, 22 M.J. at 145; *Cf. Giambra*, 33 M.J. 331. Factor 3 of his findings reflects a critical assessment of T's status as a relatively new enlisted member of the armed forces, and the fact her statement was made to investigators. His reasoned, balanced approach also is evidenced via his

exclusion of L's statement on the ground that it did not meet the necessity requirement of Mil.R.Evid. 803(24), although it met the other two criteria.

## C. USE OF CORROBORATING EVIDENCE

■ It is evident we assessed the reliability of T's statement without factoring in any of its similarity to, or "interlocking" with appellant's admissions to investigators, and without considering evidence other than the circumstances surrounding the taking of the statement. The trial judge, however, as reflected in his factor 4, did include appellant's admissions in performing his assessment. We do not believe he committed error in doing so. The trial judge was, of course, following the dictates of *United States v. Hines*, 23 M.J. 125 (C.M.A.1986). Since appellant's trial, the Supreme Court has promulgated additional guidance in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), which is now viewed as the seminal case on assessing the trustworthiness of residual hearsay statements. *United States v. Ortiz*, 34 M.J. 831 (A.F.C.M.R.1992); *see also United States v. Pollard*, 34 M.J. 1008 (A.C.M.R.1992); *United States v. Stivers*, 33 M.J. 715 (A.C.M.R.1991); *United States v. Moreno*, 31 M.J. 935 (A.C.M.R.1990), *pet. granted*, 33 M.J. 483 (C.M.A.1991).

■ Contrary to *Hines*, *Wright* holds that only the circumstances surrounding the making of a hearsay statement will be evaluated to determine the trustworthiness of the statement. Other evidence which tends to corroborate that a crime occurred has no bearing on the truthfulness or trustworthiness of a hearsay statement offered under the residual hearsay rules. *Idaho v. Wright*, 497 U.S. at 819–23, 110 S.Ct. at 3149–50. However, the Court was referring solely to the extrinsic corroborating

---

5. The following is a typical example during T's testimony.

TC: How often would you have sexual intercourse with your father after you moved on base at Lackland? Do you remember?
A None.
Q You don't remember, or you know that it did not happen?

A I don't remember.

* * * * * *

Q Is that something you want to remember or don't want to remember?
A I don't want to remember.

evidence of the case, i.e., the testimony of the declarant's sister, and the results of the declarant's physical examination. Because there was no evidence of any admissions by the defendant, that factor was not before the Court in *Wright*. Therefore, while fully mindful of *Wright's* impact on the general requirements of assessing circumstantial guarantees of trustworthiness, we do not believe *Wright* precludes, in all cases, looking to an accused's confession or admissions when assessing the reliability of a hearsay statement.[6]

■ Although the Supreme Court may well determine that a defendant's confession or admissions play no part in assessing the trustworthiness of a hearsay statement when faced with the issue, we do not believe that is yet the case. However, assuming *arguendo*, the trial judge erred by including appellant's confession in his assessment of trustworthiness, we are convinced beyond reasonable doubt the error was harmless. As reflected in our assessment, the circumstances surrounding the taking of T's statement contain more than ample indicia of reliability without factoring in appellant's admission. Further, the trial judge correctly found that the interests of justice were best served by admitting the statement. Mil.R.Evid. 803(24).

## V. FACTUAL SUFFICIENCY OF THE EVIDENCE

Appellant next attacks the factual sufficiency of the evidence. Appellant avers a multipronged basis for this assignment of error. It assumes, as a starting point, T's prior statement was erroneously admitted. The framework, in essence, is as follows. First, with respect to the offenses involving T, appellant's written admission is not an admission at all, for it is too vague, and the investigator's testimony on appellant's highly inculpatory oral admissions is unreliable. Second, in any event, there is insufficient corroboration for appellant's admis-

sion to be deemed trustworthy. Third, even if corroborated, all but one act occurred outside the statute of limitations, and that act was with the consent of T. With respect to the indecent act upon L, appellant avers the evidence is insufficient to prove the act was done with intent to gratify his sexual desires, and the evidence shows it to have been accidental while playing with L. With respect to the indecent act with T, appellant avers her testimony, standing alone, is insufficient to prove guilt.

First, except where we indicate otherwise, the evidence clearly meets the test of legal sufficiency with regards to whether the charged offenses occurred within the statute of limitations. There is sufficient evidence in the record from which a rational factfinder could be convinced of that fact beyond reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). Further, the trial judge's instructions to the members required them to find beyond a reasonable doubt that the offenses occurred on or after 14 November 1986 before they could find appellant guilty as charged. *Cf. United States v. Glenn*, 29 M.J. 696 (A.C.M.R.1989).

■ Second, we also are convinced beyond a reasonable doubt the appellant admitted to committing sexual acts upon T. We do not find anything in this record which leads us to conclude the investigator who interviewed appellant was mistaken in his recall of the content of the oral admissions made by appellant. Appellant's vague language in his written statement to investigators does not vitiate this conclusion, for he specifically referred to his oral statements.

However, we do not find sufficient evidence in the record for the factfinders to find appellant guilty of the specification and the charge, Charge II, nor are we

**6.** The *Idaho v. Wright* majority opinion's response to the dissent appears to indicate that the "interlock" theory was rejected in *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). A reading of *Lee*, however, reveals the confessions in question did not interlock on the

key issue of premeditation. *Lee v. Illinois*, 476 U.S. at 544–46, 106 S.Ct. at 2064. Further, the case dealt with the admissibility of a co-defendant's confession against the other co-defendant.

convinced beyond a reasonable doubt of appellant's guilt of sodomy.

 The AFOSI agent testified appellant admitted to having "oral sex" with T after arriving at Davis–Monthan AFB. Although appellant and the agent may have had the correct mental impression as to the definition of that term, it does not, per se, prove penetration, which is an essential element of sodomy. Article 125, UCMJ, 10 U.S.C. § 925, MCM, Part IV, paragraph 51(a); *see United States v. Hunt*, 5 M.J. 804, 805 (A.F.C.M.R.1978), *pet. denied*, 7 M.J. 161 (C.M.A.1979). T's testimony relates only to vaginal intercourse after their arrival at Davis–Monthan, as does her prior statement. There simply is no evidence to indicate penetration by the appellant during those instances of "oral sex" with T. Nonetheless, we do believe the term to be sufficiently definite to approve a finding of the lesser offense of indecent acts with another. Further, in view of appellant not arriving at Davis–Monthan AFB until 1987, the evidence does not support the time frame as starting in November 1986 as alleged in the specification. We will modify the findings accordingly.

In all other respects, we are convinced beyond a reasonable doubt the charged offenses occurred on or after 14 November 1986.

 Third, we are also convinced beyond reasonable doubt the sexual intercourse was perpetrated upon T by appellant without T's consent. Although she did not want to engage in any sexual acts with appellant, T concluded she consented to appellant's sexual acts with her because she allowed appellant to do so during the years of the acts' occurrence. The evidence, however, belies this conclusion.

Although appellant never threatened T in his quest for sex, we believe the evidence proves appellant exerted moral and psychological force upon T which overcame her will to resist his advances, even after she was beyond her tender years. Appellant, as T's father, was the dominant figure in her life. His improprieties with T started when she was 8 or 9 years old and too young to exercise informed consent or meaningfully resist his actions. As T aged, we believe she acted reasonably under the circumstances to evince her lack of consent. Pretending to be asleep at night and repeatedly telling appellant, "no," was of no avail to her.

Having been conditioned to accede to appellant's demands for sex, we believe T continued to labor under appellant's psychological force up until her departure from the home. T did not live outside appellant's home for any length of time during the period covered in the charges, and, therefore, had no opportunity to be free from the effects of appellant's influence. This becomes clearly evident when one considers T's Pavlovian response, even when 18 years old, to appellant telling her, "peekaboo," while he masturbated. We are convinced beyond reasonable doubt that T acquiesced to appellant's will rather than having consented. *Palmer*, 33 M.J. 7.

Further, we are also convinced beyond reasonable doubt appellant was not laboring under an honest or reasonably mistaken belief T consented to the acts he perpetrated upon her.

## VI. INDECENT ACT WITH ANOTHER

 Appellant next complains the trial judge erred to his prejudice when he denied a motion to dismiss the Additional Charge. Because no touching between appellant and T was alleged, the basis for the motion was failure to state an offense. We hold the trial judge correctly applied the law and did not err in denying the motion.

The Additional Charge alleged an indecent act on divers occasions via appellant exposing himself and masturbating in T's presence. Trial defense counsel based his motion on our decision in *United States v. Jackson*, 30 M.J. 1203 (A.F.C.M.R.1990). In *Jackson*, we held that, under the specific facts and circumstances therein, the accused was guilty of indecent exposure, rather than the charged offense of indecent acts with another.

Words must be given their plain meaning. The elements of indecent acts with

another do not require a touching. Accordingly, we hold that an indecent act with another may be committed without touching. MCM, 1984, Part IV, paragraph 90; *United States v. Thomas*, 25 M.J. 75 (C.M.A.1987); *United States v. Murray–Cotto*, 25 M.J. 784 (A.C.M.R.1988), *pet. denied*, 26 M.J. 322 (C.M.A.1988). To the extent *Jackson* states touching is essential to prove an indecent act with another, that portion should be viewed as dicta. *United States v. Jackson*, 30 M.J. at 1207 (Blommers, S.J., dissenting).

The Additional Charge states an offense, and the evidence is sufficient to prove appellant's guilt beyond a reasonable doubt. Further, we are convinced beyond a reasonable doubt of appellant's guilt of this offense.

## VII INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant also claims ineffective assistance of counsel at his trial. In their brief and in oral argument, appellant defense counsel averred appellant was, in fact, abandoned by his counsel, and, in essence, trial defense counsel aided the Government in meeting its burden of proof.

 Appellant's averment presents a two prong basis to support his claim. The first is that his counsel's misfeasance at trial so completely defeated the adversary process required by the 6th Amendment that, in the instant case, prejudice should be presumed. *See United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). We reject this assertion and find to the contrary.

As is apparent from the contents of this opinion, trial defense counsel made and litigated various motions in an attempt to gain dismissal of the charges and to exclude evidence, including appellant's confession to investigators; they cross-examined witnesses; contested proposed instructions; and presented arguments based on their theory of the case. Their conduct of the appellant's defense clearly preserved the adversary nature of the process to the degree that the presumption of their competency survived. Whatever may be one's

view of the efficacy or wisdom of counsel's tactics and performance, their performance clearly preclude any likelihood that counsel failed to function as the Government's adversary. *United States v. Cronic*, 466 U.S. at 657–67, 104 S.Ct. at 2046–51. Therefore, we move to appellant's second prong, which is that trial defense counsel committed errors so egregious that he was deprived of his 6th Amendment right to effective assistance of counsel.

 Appellant's main ineffective assistance claim is that defense counsel conceded his guilt in both opening and closing argument. In his affidavit, appellant asserts he felt sold out and abandoned. Further, he asserts that trial defense counsel was not prepared to cross-examine Dr. Rosenzweig, and he failed to interview and call another civilian expert witness, Dr. Esplin, who would have disputed Dr. Rosenzweig's testimony. Appellant avers that those moves were not tactical decisions, but plain lack of preparation.

In their affidavits in response, defense counsel avow they consulted in full with appellant at every step of the trial, and they had his consent on all tactical decisions. Further, they assert that they arranged for appellant to be evaluated by Dr. Esplin, and they discussed Dr. Rosenzweig's anticipated testimony in depth, with Dr. Esplin. Counsel state that Dr. Esplin opined there were no areas on which he disagreed with Dr. Rosenzweig, and his evaluation of appellant did not provide the defense with favorable information. Consequently, counsel state that, with the appellant's concurrence, they made a tactical decision not to cross-examine Dr. Rosenzweig, unless his testimony differed from their interview of him. Finally, counsel state their tactics were heavily impacted by the trial judge's rulings on their pretrial motions, especially with regards to the ruling that a consensual incestuous relationship could constitute an indecent act and was an included offense of the rape and sodomy charges.

Counsel state that, as a result of the rulings of the trial judge, their professional

judgment led them to conclude that their best tactic was to concede the *consensual* incestuous relationship and aim for the lesser offenses and strive for a minimal sentence. They state the obvious. when they state that their tactics would have differed with more favorable rulings by the trial judge. Lead counsel stated that his efforts to present evidence of appellant's good military character was impacted by appellant's decision not to testify in his own behalf.

In a rebuttal affidavit, appellant admits to consenting to offering a conditional plea of guilty to the lesser included offense of indecent exposure, but he denies being informed of or consenting to the tactics used by defense counsel, especially his argument. Appellant states his desire was to litigate on the basis of consent and the statute of limitations. He also claims he desired to testify in his own behalf, but lead counsel threatened to withdraw from the case if appellant insisted on testifying. Because lead counsel was reputed to be the best counsel available, appellant did not testify in order to retain counsel's representation.

The standard by which effectiveness of counsel is measured is governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must demonstrate first, that counsel were deficient, *and,* second, the claimed deficiency was prejudicial. Absent either, the claim must fail. 466 U.S. at 697, 104 S.Ct. at 2069.

The portion of trial defense counsel's opening statement on which appellant relies is as follows:

> [Y]ou are going to hear evidence that there was an incestuous relationship between T and her father.... What you're going to hear from T is that there was one incident of sexual intercourse here at Davis–Monthan Air Force Base—one incident ... and the fact she believes she consented ... [B]ut you're going to also hear her testify that she cannot say that it happened after 14 November of '86.

You are going to hear about Master Sergeant Hansen being called into the OSI, being read his rights, and admitting to an incestuous relationship; but when all the evidence comes back, I'm going to ask you to consider it; and you're *going to find Master Sergeant Hansen guilty of something.* The court is going to instruct you about lesser included offenses. We encourage you to look at those (emphasis added).

Some of the questioned portions of counsel's closing argument on findings are as follows:

> I can't stand here and ask you for an acquittal of everything. I can't do that because things did happen.... There's got to be a conviction on indecent acts—incest. It is wrong. I'd like to be able to stand up here and tell you it's not, but it is.... I can't really say a whole lot about the last additional charge. There were some things that happened, and I can't stand up here and ask you for an acquittal. I wish I could.
>
> But, after you look at all the evidence, we know you're going to have to come back in with a finding of not guilty to some things and guilty to some things.... We urge you to go back ... and come back with an acquittal here (pointing to the government's chart of the charges and LIOs). I know you're going to have to come back with a conviction here and down here (again pointing to the government's chart....).

During oral argument, appellate defense counsel vigorously contested the concept that trial defense counsel was pursuing a tactic of "damage limitation." Although they conceded damage limitation could be construed as a reasonable trial strategy, appellate defense counsel averred that trial defense counsel's execution of the strategy was inept to the point that it constituted ineffectiveness. We reject this contention and find appellant has not carried his burden; trial defense counsel's performance was neither deficient nor prejudicial.

First we resolve the factual issues against appellant. We believe the weight of the evidence is that trial defense counsel

did consult with appellant regarding their trial strategy and recommendation. Both defense counsel emphasize that fact. Further, there were at least two points in the trial where lead counsel requested recesses specifically to consult on the progress of the case. One was on the conditional guilty plea, which appellant concedes, and the other was to consult with co-counsel on whether a defense case on the merits would be presented. We doubt appellant was excluded from this session. Co-counsel even provides the location and the time where the consultation on ultimate trial strategy was decided—it was on a balcony and just prior to the members being summoned. As stated, we find the weight of the evidence to be against appellant. We now turn our attention to specific areas complained of regarding counsel's trial performance.

▆ First, trial defense counsel's opening statement, as well as portions of his argument on findings and their overall performance, must be viewed from counsel's perspective and in the context of the dynamics of appellant's trial, not in a vacuum. *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987). Contrary to trial defense counsel's assertions, the trial judge ruled that an incestuous relationship, although consensual, could constitute an indecent act, and, therefore, was an included offense to the rape and sodomy charges.[7] Given that ruling, it would have required an act of jury nullification for appellant to have left the courtroom with a full acquittal. To assert consent as a defense was, in essence, to admit the charged acts occurred.

Second, contrary to appellant's avowal, trial defense counsel did assert consent as a defense, as well as the statute of limitations. In pursuing this strategy, defense counsel specifically waived the mistake of fact instruction on the sodomy charge to emphasize the assertion it was outside the statute of limitations. In the face of T's memory lapse, the Government relied on T's prior statement to firmly establish the

dates and frequency of the occurrences. It is not unreasonable to infer that one reason trial defense counsel did not cross-examine Dr. Rosenzweig, is that counsel highlighted T's accommodating nature to argue that she accommodated the AFOSI agents in writing her statement.

As portions of trial defense counsel's argument set forth above reflect, he argued the evidence would show only one act of sexual intercourse within the statute of limitation, and that one act was consensual, and the court's findings should be no greater than an indecent act. Further, as reflected, trial defense counsel urged an acquittal on the specification regarding L. A reading of trial defense counsel's entire argument on findings reflects the recurrent theme that, although possibly repulsive to the members and legally indecent, the sexual acts between T and appellant were not rape and forcible sodomy, but consensual. We believe he was using that concession as guideposts to that conclusion.

▆ We view trial defense counsel's concessions as efforts at seizing and retaining credibility with the members. Making concessions for such tactical advantage generally will not be second guessed by appellate courts, as long as counsel's decisions are reasonable under the circumstances then prevailing. *See United States v. Matthews*, 16 M.J. 354, 363–64 (C.M.A.1983). Such decisions are not assessed on the basis of their success or lack thereof at trial. Although eloquently argued, appellate defense counsel's assertions reduce themselves to the fact that perhaps they would have tried the case differently. Trial defense counsel's performance will not be deemed deficient on that basis. *United States v. Cohen*, 2 M.J. 350 (A.F.C.M.R.1976), *pet. denied*, 3 M.J. 88 (C.M.A.1977).

## VIII. INSTRUCTION ON EFFECTS OF PUNITIVE DISCHARGE

▆ Appellant also asserts as error, the trial judge's instruction on the effects of a

---

7. Also to trial defense counsel's surprise, the trial judge refused to read our decision in *United States v. Jackson*, 30 M.J. 1203 (A.F.C.M.R.

1990) to mean that a touching was required to constitute an indecent act with another.

punitive discharge. The portion of the instruction averred to be error reads as follows:

However, vested benefits from a prior period of honorable service are not forfeited by receipt of a dishonorable or bad conduct discharge that would terminate this current term of service.

The basis of appellant's contention is an opinion by the General Counsel of the Department of Veterans Affairs (DVA) which states veterans' benefits do not "vest," that, in certain specified circumstances, a dishonorable discharge from a current term of service will deprive a veteran of benefits based on honorable service in prior terms of service. We agree with appellant that the instruction is technically erroneous in this regard, but we disagree on prejudicial impact.

First, trial defense counsel did not interpose an objection to the instruction when asked. Although trial defense counsel unsuccessfully requested the trial judge to include language to the effect that a punitive discharge might impact appellant's ability to find employment, he did not object to the portion set forth above. Second, the instruction was essentially correct as it applied to appellant's circumstances.

The DVA General Counsel's opinion also states that a dishonorable discharge from a current term of service will not result in a forfeiture of benefits based on a prior term of honorable service, unless the veteran is convicted of certain enumerated offenses. Those offenses are mutiny or sedition, aiding the enemy, spying, espionage, treason, rebellion, subversive activities, sabotage, and certain violations of the Atomic Energy Act of 1954 and the Internal Security Act of 1950. Only a Presidential pardon for those offenses avoids that result. Department of Veterans Affairs Office of General Counsel Memorandum Opinion, Precedent 61–91, July 17, 1991, p. 8.

Appellant was not convicted of any of those enumerated offenses. Further, the instruction did not detract from the severity of a dishonorable discharge as punishment, or make it easier for the members to impose it as part of appellant's sentence.

The trial judge's instruction included an admonition on the severity. of a dishonorable discharge and that it is reserved for very serious misconduct.

Accordingly, we are convinced that the instruction was nonprejudicial in this case. Article 59(a), UCMJ; *see United States v. Soriano,* 20 M.J. 337 (C.M.A.1985).

## IX

We have considered appellant's remaining assignments of error and find them to be without merit. *United States v. Forbes,* 19 M.J. 953 (A.F.C.M.R.1985); Mil.R.Evid. 304(g); Mil.R.Evid. 103; *United States v. Graf,* 35 M.J. 450 (C.M.A.1992).

## X

In view of our conclusion in Part V, above, normally we would amend the specification to conform with our findings. However, appellant was convicted of an existing charge of indecent acts covering the same time period (the Additional Charge and its specification). Therefore, should we find indecent acts an included offense of Charge II, they would merge with the indecent acts of the Additional Charge. To avoid multiplicity and to conform the charges and specifications to our review and findings, we hereby amend the specification of the Additional Charge to read

In that ..., did, ... on divers occasions between about 1 Nov 87 and about 1 Apr 90, wrongfully commit indecent acts with T by presenting himself totally naked, exposing his genitals, and masturbating in her presence, and by performing oral sex upon her body.

Charge II and its specification are hereby dismissed. For clarification: we are convinced beyond a reasonable doubt of appellant's guilt of Charge I and its specification, Charge III and its specifications, and the Additional Charge and its specification, as amended. We are not convinced beyond a reasonable doubt of appellant's guilt of Charge II and its specification.

Reassessing the sentence based on our findings, we find appropriate, only so much

of the sentence as provides for a dishonorable discharge, confinement for 14 years, and reduction to E–3.

## XI. DECRETAL

The findings and sentence, as modified, are correct in law and fact. Article 66(c). Accordingly, they are hereby,

AFFIRMED.

Senior Judge O'HAIR and Judge GRUNICK concur.

