**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Master Sergeant MICHAEL R. COULSON**
**United States Air Force**

**ACM 38419**

**29 January 2015**

Sentence adjudged 12 April 2013 by GCM convened at Tinker
Air Force Base, Oklahoma. Military Judge: J. Wesley Moore.

Approved Sentence: Dishonorable discharge, confinement for 7 months,
forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James and
Major Zaven T. Saroyan.

Appellate Counsel for the United States: Captain Thomas J. Alford and
Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under
Air Force Rule of Practice and Procedure 18.4.

ALLRED, Judge:

A general court-martial composed of officer members convicted the appellant,
contrary to his pleas, of forcible pandering and communicating a threat, in violation of
Articles 120c and 134, UCMJ, 10 U.S.C. §§ 920c, 934.[1] The adjudged and approved

---

[1] The appellant was found not guilty of destroying non-military property and of two specifications of rape in
violation of Articles 109 and 120, UCMJ, 10 U.S.C. §§ 909, 920.

sentence consisted of a dishonorable discharge, 7 months' confinement, forfeiture of all pay and allowances, and reduction to E-1.

Before us, the appellant argues (1) the evidence is legally and factually insufficient to sustain his conviction for forcible pandering; (2) the military judge erred in giving the court members an instruction on false exculpatory statements; (3) the military judge erred when he allowed trial counsel to make a "pen and ink" change to the charge sheet; (4) he received ineffective assistance of counsel during the trial and post-trial portions of his court-martial; and (5) his Eighth Amendment[2] rights were violated when he was denied access to medication in a civilian confinement facility. Finding no error prejudicial to the substantial rights of the appellant occurred, we affirm.

*Background*

The victim in this case, NW, was unhappily married. Seeking to escape the relationship, she responded to an advertisement the appellant had posted on Craigslist indicating a desire for female companionship. This led to an online correspondence in which NW complained to the appellant that her husband was abusing her. The appellant and NW eventually began meeting in-person three to four times a week. He later promised to treat NW better than her husband had and, at his urging, NW left her husband and moved in with the appellant.

However, NW's new relationship quickly turned abusive as the appellant, among other things, compelled her to engage in acts of prostitution on multiple occasions, resulting in his conviction for forcible pandering. The appellant was also convicted of communicating a threat by telling one of her patrons that he would "put a bullet in [his] head" for failing to pay the agreed amount.

*Legal and Factual Sufficiency*

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

---

[2] U.S. CONST. amend VIII.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The appellant contends the evidence was factually and legally insufficient to support his conviction of forcible pandering, in violation of Article 120c(b), UCMJ.[3] He

---

[3] The applicable statute, 10 U.S.C. § 920c(b), states: "Any person subject to this chapter who compels another person to engage in an act of prostitution with any person is guilty of forcible pandering and shall be punished as a court-martial may direct." At the time of trial, the following caveat was included in a note to *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45c. (2012 ed.):

> The subparagraphs that would normally address elements, explanation, lesser included offenses, maximum punishments, and sample specifications are generated under the President's authority to prescribe rules pursuant to Article 36. At the time of publishing this MCM, the President had not prescribed such rules for this new statute, Article 120c. Practitioners should refer to the appropriate statutory language and, to the extent practicable, use Appendix 28 as a guide.

At trial, the military judge instructed the members, in pertinent part, as follows:

> In Specification [sic] of Charge III, the accused is charged with the offense of forcible pandering, in violation of Article 120c, UCMJ. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> That at or near Oklahoma City, Oklahoma, on divers occasions, between on or about 1 July 2012 and on or about 7 July 2012, the accused compelled [NW] to engage in acts of prostitution.
>
> . . . .
>
> "Act of prostitution" means a sexual act or sexual contact on account of which anything of value is given to, or received by, any person.
>
> "Compel" means causing another person to do something against her will by force, threats, or overwhelming pressure.
>
> "Sexual act" means the penetration, however slight, of the vulva or anus or mouth by the penis of another.
>
> "Sexual contact" means
>
> (A) touching, or causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate or degrade any person; or

generally does not contest that NW engaged in acts of prostitution while she was also involved in a relationship with him. He argues, however, that there is insufficient evidence to prove he compelled her to engage in this activity. We disagree.

The relationship between NW and the appellant began pleasantly but soon became coercive. During their online communications, the appellant would ask NW to forward pictures of herself, including sexual ones, and would then become angry if she was reluctant to do so. They first met in person when the appellant insisted upon coming to NW's house, despite her protests that this could cause trouble because her husband was home. They ultimately met in NW's back yard, where they engaged in sex. They met several more times before she moved in with the appellant, and they had sex during some of those encounters.

The appellant helped NW financially, by paying a traffic ticket, dental bills, and other expenses. According to NW, he then used this as leverage against her. He urged NW to move in with him and, when she became hesitant, he insisted that she owed him for the support he had provided her. He also threatened to expose their relationship to her husband. On about 29 June 2012, leaving her husband a letter composed by the appellant, NW moved into his apartment.

The day after she moved in with him, the appellant demanded that NW go into the bedroom and remove her clothes, and she complied. When he then approached her, she turned from him seeking to avoid sex. In response, the appellant held NW by the neck, choked her, told her he could make things worse for her, and warned that she should not "try anything." Within a few days, the appellant informed NW he was now having trouble supporting her financially. Despite her protests that she "wasn't that type of person" and didn't think she "would be able to do that," the appellant advertised her services as a prostitute on Craigslist.

Shortly thereafter, the appellant told NW a man was coming to the apartment for sex. She told him she was frightened, but he demanded that she go through with it. The appellant hid in the apartment while the man entered and followed NW to the bedroom. The man placed money on a table. Then he and NW engaged in sex for about 20 minutes

---

> (B) any touching, or causing another person to touch, either directly or
> through the clothing, any body part of any person, if done with an intent or [sic]
> arouse or gratify the sexual desire of any person.
>
> Touching may be accomplished by any part of the body.

The defense did not object to the foregoing instructions by the military judge. We have examined these instructions for error; and we find none, plain or otherwise. *See United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013) (stating where counsel fails to object to an instruction at trial, we review the military judge's instruction for plain error.). *See also* Rule for Courts-Martial 920(f).

before the man left the apartment. The appellant took that money without telling NW how much had been paid. On another day, the appellant drove NW to meet two different men. She met the first man at his barn, and then went to his house for sex. The appellant then drove NW to a 7-Eleven store, where they met the second man and followed him to his house, where he and NW had sex. Each of these two men paid NW for sex, and she delivered the money directly to the appellant.

On 7 July 2012, about a week after she moved in with him, the appellant told NW he had arranged for her another sexual encounter. When NW indicated she did not want to go through with it, the appellant approached her as if he would choke her and told her she had no choice because the arrangements were already made. The appellant then drove NW to a motel parking lot where she met the man. NW went with the man into his motel room, and they had sex. Afterward, the man put money in NW's purse, and she left the motel room without checking the amount. In the parking lot, the appellant discovered the man had paid only $36 dollars, instead of the $200 they had agreed upon. The appellant went to the man's motel room with a small baseball bat or a crowbar. Shouting angrily, he beat on the door, eventually breaking the door knob. He called the man on his cell phone, saying he would find him and put a bullet in his head. The man refused to open the door, and eventually the appellant drove away. On the way home, the appellant screamed at NW and threatened to leave her on the side of the highway.

In fear of the appellant, NW concluded she was now worse off than when she had left her husband. On 9 July 2012, while the appellant was away from the apartment, NW called a friend. The friend picked her up at the appellant's house, and they drove directly to Tinker Air Force Base, where NW reported the appellant to the Air Force Office of Special Investigations (AFOSI).

Taken as a whole, there is abundant evidence that the appellant compelled NW to engage in prostitution. He engaged in angry outbursts and made physical and financial threats against NW. On one occasion, he intimidated NW by throwing a small dog across a room of their apartment. The man with whom NW had sex at the motel testified that, as the appellant raged and pounded on his door, he was so fearful he stood behind his bed preparing to defend himself with a loaded handgun. Days afterward, the man remained so afraid of the appellant that he covered a tattoo on his arm with another tattoo to prevent the appellant from identifying him.

Viewing the evidence in the light most favorable to the Government, we are convinced a rational factfinder could find beyond a reasonable doubt the appellant was guilty as charged. Upon our own review of the evidence in the record of trial, we are personally convinced of the appellant's guilt beyond a reasonable doubt.

*Instruction Regarding False Exculpatory Statements*

Over defense objection, the military judge gave the court members the standard Benchbook instruction on false exculpatory statements. *See* Department of the Army Pamphlet (D.A. Pam) 27-9, *Military Judges' Benchbook*, ¶ 7–22 (1 January 2010).[4] The appellant argues the military judge abused his discretion by giving this instruction. We disagree.

Whether a military judge properly instructed the court members is a question of law we review de novo. *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003). A military judge's decision to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996).

The instruction given by the military judge reflects an established principle of law, namely that "false statements by an accused in explaining an alleged offense may themselves tend to show guilt." *S e e United States v. Colcol*, 16 M.J. 479, 484 (C.M.A. 1983) (citing *Wilson v. United States*, 162 U.S. 613 (1896)). The *Benchbook*

---

[4] This instruction stated:

> There has been evidence that after the offenses were allegedly committed, the accused may have made false statements about the alleged offenses.
>
> Conduct of an accused, including statements made and acts done upon being informed that a crime may have been committed or upon being confronted with a criminal charge, may be considered by you in light of other evidence in the case in determining the guilt or innocence of the accused.
>
> If an accused voluntarily offers an explanation or makes some statement tending to establish his innocence, and such explanation or statement is later shown to be false, you may consider whether this circumstantial evidence points to a consciousness of guilt. You may infer that an innocent person does not ordinarily find it necessary to invent or fabricate a voluntary explanation or statement tending to establish his innocence. The drawing of this inference is not required.
>
> Whether the statement was made, was voluntary, or was false is for you to decide.
>
> You may also properly consider the circumstances under which the statement was given, such as whether it was given under oath, and the environment such as possible mistake, confusion, lack of recall, or the stress inherent in the interrogation process.
>
> Whether evidence as to an accused's voluntary explanation or statement points to a consciousness of guilt, and the significance, if any, to be attached to any such evidence, are matters for determination by you, the court members.

provides that this instruction for false exculpatory statements can be given if (1) the Government introduces evidence of an accused's false statement or a false explanation concerning an alleged offense, and (2) the Government contends that an inference of consciousness of guilt should be drawn from this evidence. D.A. Pam. 27-9, ¶ 7–22. This instruction is not appropriate when the accused has made only a general denial of guilt because that "does not demonstrate any consciousness of guilt." *Colcol*, 16 M.J. at 484. When the alleged false statement is merely a general denial of guilt, "the factfinder must decide the very issue of guilt or innocence" and thus an instruction would "produce confusion because of its circularity." *Id.*

The appellant made a number of statements to investigators which the members might reasonably have found false. The appellant admitted that he drove NW to a string of meetings with men. Text messages from the appellant and a wealth of circumstantial evidence demonstrated not only that he knew these meetings were for prostitution, but also that he had arranged the encounters himself. Nevertheless, under rights advisement, he claimed to have had no idea the meetings involved prostitution. When the agents confronted him with their awareness that he had driven NW to meet a man late at night at a motel, the appellant claimed implausibly to have believed the man was merely a "friend that she knew from Texas." When asked about his pounding on the motel room door demanding money of the man inside, the appellant professed that the man owed him "gas money" for bringing NW to visit him. When asked by the AFOSI how much the man owed him for gas, the appellant claimed to have forgotten. Similarly, when questioned about taking NW to the rendezvous with the man at the 7-Eleven store, and then following the man to his house, the appellant told the AFOSI, "Yeah, that was another of her friends."

We find considerable evidence that the appellant made false statements or gave false explanations for the alleged offense of forcible pandering sufficient to raise the inference of consciousness of guilt. The instruction in question was fairly raised by the evidence at trial, and the military judge did not abuse his discretion by giving it to the members.

*Change to Charge Sheet*

Charge II, as preferred and referred to trial in the present case, alleged two specifications of rape and one specification of forcible pandering, all in violation of Article 120, UCMJ. Prior to arraignment and without objection from the defense, trial counsel made a "pen and ink" change to the charge sheet, to reflect that forcible pandering was a violation of Article 120c, UCMJ, rather than Article 120, UCMJ.[5] The

---

[5] In his assignment of error, the appellant appears to argue that the change to the charge sheet occurred *after* arraignment. The record plainly reflects, however, that the Government made this change prior to the court-martial session at which the appellant was arraigned.

charge sheet was then renumbered accordingly. The appellant now urges that the military judge committed reversible error in permitting the change. We disagree.

Whether a change in a specification is a minor change or a major change is a question of law. *United States v. Alexander*, 61 M.J. 266, 269 (C.A.A.F. 2005). The test is: (1) does the change result in an "additional or different offense" and (2) does the change prejudice "substantial rights of the [accused]." *United States v. Sullivan*, 42 M.J. 360, 365 (C.A.A.F. 1995). *Id.* (quoting Fed. R. Crim. P. 7(e)).

Rule for Courts-Martial (R.C.M.) 603(c) permits minor amendments of charges and specifications "at any time before findings are announced if no substantial right of the accused is prejudiced." R.C.M. 603(a) defines minor changes as "any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." The Discussion to R.C.M. 603(a) adds, in pertinent part, "Minor changes include those necessary to correct inartfully drafted or redundant specifications; to correct a misnaming of the accused; *to allege the proper article*; or to correct other slight errors." (emphasis added).

In the present case, the change in question did nothing more than correct the charge sheet to "allege the proper article." Beyond this, there is no indication it had any impact upon the trial. It did not add an offense or change the nature of the alleged offense, nor did it prejudice any right of the appellant. The inconsequentiality of the change is borne out by defense counsel allowing it without comment.

*Ineffective Assistance of Counsel*

The appellant alleges his civilian trial defense counsel were ineffective when they failed to call certain witnesses during findings and failed to prepare and present an adequate sentencing case.[6] The appellant also claims that his military defense counsel was ineffective by failing to advise him regarding deferment of forfeitures. We disagree and find counsel were not ineffective in their representation. We also conclude that a fact-finding hearing is not necessary to resolve this issue. *See United States v. Ginn*, 47 M.J. 236, 244–45 (C.A.A.F. 1997).[7]

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v.*

---

[6] The appellant elected to forego the assistance of any military defense counsel at the court-martial.

[7] Although this court may not decide "disputed questions of fact pertaining to a post-trial claim" of ineffective assistance of counsel on the basis of conflicting affidavits, our superior court has set forth a number of scenarios under which a post-trial evidentiary hearing would not be required. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

*Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

The appellant bears the heavy burden of establishing his trial defense counsel were ineffective. *See United States v. McConnell*, 55 M.J. 479, 484 (C.A.A.F. 2001). The law presumes counsel actions to be appropriate and we will not second-guess a trial defense counsel's strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 409–10 (C.M.A. 1993). To prevail on a claim of ineffective assistance of counsel, the appellant "must rebut this presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987).

### 1. During the Trial Stage
#### (a) Failure to Call Witnesses During Findings

The appellant claims he provided his trial defense counsel the names of and contact information for four witnesses who should have been called to testify on his behalf. According to the appellant, these witnesses had observed the appellant and NW together and would say that NW never acted afraid of him, thereby rebutting the charge of forcible pandering.

Responding via sworn declarations in response to an order from this court, Mr. G and Mr. W, the appellant's trial defense counsel, acknowledged that the appellant provided the names of these four potential witnesses. Mr. G indicates that all four worked in public establishments where, in relatively brief instances, they observed the appellant and NW interacting together cordially. Mr. G initially placed three of the four names on the defense witness list but ultimately concluded their testimony would be of such minimal value that it would weaken their case and appear to the panel that the defense was "desperate and grasping at straws." According to Mr. W, the fourth individual was deliberately omitted from the witness list because the defense feared he would provide information bolstering the prosecution's case. Mr. G states the decision not to call these witnesses was made after full consultation with the appellant and with his concurrence.

The declarations of counsel provide sound explanations for their approach to these witnesses. We will not second-guess these tactical decisions. *See Morgan*, 37 M.J. at 409–10; *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) ("Defense

counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so."). We find the appellant has failed to meet his burden of demonstrating his counsel's conduct was deficient. Furthermore, we find that he has failed to demonstrate any prejudice were it so.

*(b) Preparation and Presentation of Presentencing Matters*

The appellant alleges his trial defense counsel failed to adequately prepare and represent him during the sentencing phase of his court-martial. Specifically, he claims that his counsel: (1) offered only one documentary exhibit on his behalf consisting of five medals; (2) wrote his unsworn statement and handed it to him 30 seconds before he was to read it aloud in court; and (3) caused him to concede guilt twice in his unsworn statement.

The declaration from Mr. W provides a broader picture of what occurred prior to and during sentencing. Mr. W states that the appellant was uncooperative and even hostile whenever his counsel attempted to discuss with him the possibility of sentencing proceedings. He indicates that the appellant refused to provide names of potential sentencing witnesses, nor documentation such as military awards and family photos.

Mr. G agrees with Mr. W regarding the difficulty of preparing the appellant for sentencing proceedings. The appellant would not provide input for an unsworn statement, so Mr. G drafted one for him. The appellant was unwilling to review or edit the draft unsworn statement, saying he would not be giving one. Then, at the last moment, the appellant changed his mind and read the drafted statement in court, doing so from Mr. G's iPad, because he had failed to bring with him the paper copy his counsel had provided him.

The appellant's lack of cooperation is manifest in an e-mail he sent to Mr. G, stating:

> I have plenty of character witnesses, but we should probably discuss this because if guilty of rape/forcible pandering I'm not putting up any sentencing mitigation. If found guilty of either of those charges that would result in me living in the free world as a sex offender then I don't want any part of that. In fact, I will probably ask the panel to give me about 60 years to ensure I never come out of there.

As for any concession of guilt, the appellant did state in his unsworn statement that he was "truly sorry for the decisions that put us here." He stated that he did not behave himself as a 19-year member of the service should have, and he asked that the

court members give him the opportunity to recover from his poor decisions. Aside from these generic allusions to mistakes and a desire for mercy, the appellant made no admissions to any wrongdoing.

Both of the appellant's civilian defense counsel were highly-experienced military justice practitioners. Reviewing the record as a whole, we find that their representation of the appellant was strong and spirited. Their advocacy led to his acquittal of both specifications of rape—the most serious allegations in this case—and destruction of non-military property. During sentencing, he received only seven months of a possible eight years of confinement. Particularly in light the appellant's own unhelpfulness with regard to presentencing matters, we cannot fault the tactical decisions of which the appellant now complains.

In sum, we find that, even if all the appellant alleges is true, there are reasonable explanations for his civilian defense counsel's actions during the findings and sentencing portions of his trial. We do not find that the level of their advocacy fell measurably below the performance ordinarily expected of fallible lawyers. Furthermore, the appellant has again failed to demonstrate any prejudice. We find his claims of ineffective assistance by his civilian counsel to be without merit.

### 2. During the Post-trial Stage

The appellant alleges his military defense counsel never advised him that he could have his military pay go to his son after trial. In her sworn declaration, however, the appellant's assigned military counsel, Captain (Capt) T, stated that she discussed with the appellant his right to request waiver and/or deferment of forfeitures.[8] She describes at least two conversations in which she and the appellant addressed the specific question of deferring forfeitures. Capt T outlines in some detail the appellant's reasons for affirmatively choosing not to submit such a request to the convening authority.

Even if there are opposing affidavits raising a factual dispute that is "material" to the resolution of an ineffective assistance of counsel claim, we can resolve the legal issue without a fact-finding hearing if the appellate filings (apart from the conflicting declarations) and the court record as a whole compellingly demonstrates the improbability of the facts alleged by the appellant. *Ginn*, 47 M.J. at 244–45; *United States v. Fagan*, 59 M.J. 238, 243 (C.A.A.F. 2004). That is the situation here. We can resolve this claim based on the record because it indicates the appellant was advised of his right to request deferment of forfeitures before the end of his trial. The "Post-Trial and Appellate Rights Advisement" (submitted as an appellate exhibit) explains that the appellant was advised of his right to request deferment or waiver of forfeitures. It bears the signature of both the appellant and Mr. G. Moreover, in response

---

[8] This defense counsel was detailed to represent the appellant for post-trial proceedings.

to questions from the military judge, the appellant declared he had signed this document, he had read it thoroughly before signing, his counsel had explained to him the rights described therein, and he had no question about any of these matters. We therefore discount the appellant's current factual allegations. The record compellingly demonstrates that the appellant was aware of the process to request deferment or waiver of forfeitures. Furthermore, we find, based on our review of the entire record, that the appellant's military defense counsel was not ineffective.

*Cruel and Unusual Post-Trial Punishment*

The appellant claims that two civilian confinement facilities failed to provide him his prescribed medication, thereby denying him his right to necessary medical care. He contends that his post-trial confinement conditions thus constituted cruel and unusual punishment under the Eighth Amendment. We conclude that even if the facts as asserted by the appellant are true, he failed to meet his burden of establishing grounds for relief.

We review de novo whether the facts alleged establish cruel and unusual punishment, including where that punishment allegedly occurred in a civilian facility. *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006); *United States v. McPherson*, 72 M.J. 862, 872 (A.F. Ct. Crim. App. 2013). To prevail on this type of claim under an Eighth Amendment analysis, the appellant must show: (1) he has exhausted administrative remedies, under both the confinement grievance system and in accordance with Article 138, UCMJ, 10 U.S.C. § 938; (2) prison officials committed a "sufficiently serious act or omission" that denied him necessities; and (3) the act or omission resulted from a culpable state of mind reflecting deliberate indifference by confinement officials to the appellant's health and safety. *Lovett*, 63 M.J. at 215. We look objectively at whether an act denied a prisoner his necessities, while we subjectively test the state mind of the prison officials. *United States v. Brennan*, 58 M.J. 351, 353 (C.A.A.F. 2003).

The appellant was entitled to reasonable medical care for his medical condition while in confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In the context of a confinement facility, a "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104. "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

We have previously examined this high standard and determined that a serious medical need requires "*serious health risks*." *United States v. Haymaker*, 46 M.J. 757, 761 (A.F. Ct. Crim. App. 1997). Our superior court has held that there must be evidence of physical or psychological pain in order for the appellant to prevail on a claim of an

Eighth Amendment violation. *Brennan*, 58 M.J. at 354; *United States v. Sanchez*, 53 MJ. 393, 396 (C.A.A.F. 2000).

In the present case, the appellant has submitted an affidavit in which he claims he did not receive "necessary heart and anxiety medications" during two relatively-brief periods of civilian post-trial confinement, prior to his transfer to Naval Consolidated Brig at Miramar. The appellant states he was confined in the Potts County Jail in Oklahoma for seven days, he received none of his medications during the first two days of this confinement, and then received his medications only "sporadically" for the remainder of the seven-day period. The appellant states he was then confined at the Midwest City Jail for two weeks, and there received his medications "on some days, but not on others." The appellant claims to have raised this concern with his military defense counsel and to have complained to certain unnamed guards.

Aside from the generalized assertion that his receipt of medication was sporadic over a three-week period, the appellant provides us little from which we might conclude relief is warranted. He tells us nothing as to the nature of his supposed medical condition(s). He does not name the medications he was denied, nor give us any indication as to the amount and frequency of their dosages. He makes no claim that he suffered any actual harm, nor does he give any hint as to the potential harm from occasional missed doses. Ultimately, we can only speculate as to the gravity of any threat to the appellant's health and safety.

Assuming, without deciding, that the conditions of the appellant's confinement were as he claims them to be and that he exhausted his grievance system remedies, we conclude that he has not sustained his burden of establishing (1) that prison officials committed a "sufficiently serious act or omission" that denied him necessities, nor (2) that the act or omission resulted from a culpable state of mind reflecting deliberate indifference to his health and safety by the confinement officials. *See Lovett*, 63 M.J. at 216.[9] The information in the record does not lead us to the conclusion that prison officials were acting in a manner deliberately indifferent to his "serious medical needs." We therefore conclude that the appellant does not prevail on his Eighth Amendment claim.[10]

---

[9] We considered a post-trial fact finding hearing pursuant to *United States v. Dubay*, 37 C.M.R. 411 (C.M.A. 1967). However, the appellant did not produce sufficient evidence to reach the threshold for a *Dubay* hearing. "[T]he mere submission of an affidavit does not trigger the need for a post-trial evidentiary hearing." *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004). A *Dubay* hearing is only appropriate if the affidavits raise a factual dispute to a post-trial claim and cannot be resolved through the application of the five factors in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Here we need only address one gate of *Ginn*: "[I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis." *Id.* The appellant has not set forth any facts of harm or substantial risk of harm. Any inferences this court could make of harm are at best speculative. Therefore, we decline to order a *Dubay* hearing.

[10] In light of our conclusion that the appellant has failed to establish his Eighth Amendment claim, we need not address whether he initiated or exhausted the prisoner grievance system and whether his failure to file an Article 138, UCMJ, 10 U.S.C. § 938, complaint is excused under the circumstances of this case.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist