IN THE CASE OF

UNITED STATES, Appellant
v.
Joshua M. FAGAN, Private
U.S. Army, Appellee

No. 03-5002

Crim. App. No. 20000891

United States Court of Appeals for the Armed Forces

Argued October 7, 2003
Decided February 4, 2004

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Mark A. Visger (argued);  Colonel Lauren
B. Leeker, Lieutenant Colonel Margaret B. Baines, Major Jennifer
H. McGee, and Captain Christopher Graveline (on brief).

For Appellee:  Captain Kathleen D. Schmidt (argued); Colonel
Robert D. Teetsel and Captain Sean S. Park (on brief);
Lieutenant Colonel E. Allen Chandler, Jr.

Amicus Curiae:  Colonel LeEllen Coacher, Lieutenant Colonel
Lance B. Sigmon and Captain C. Taylor Smith (on brief) – for
United States Air Force Appellate Government Division.

Amicus Curiae:  Colonel R. M. Favors, USMC, and Lieutenant Lars
C. Johnson, JAGC, USNR (on brief) – for United States Navy-
Marine Corps Appellate Review Activity, Government Division.

Military Judge:  Kenneth Clevenger

**This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Private First Class Joshua Fagan entered guilty pleas and was convicted by a military judge of larceny, forgery and the wrongful use and distribution of marijuana, in violation of Articles 121, 123, and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921, 923 and 912a (2000). He was sentenced by the military judge to 30 months confinement, total forfeiture of pay and allowances and a dishonorable discharge. The convening authority reduced the confinement to 20 months and approved the balance of the sentence.

Fagan's conviction and sentence were then submitted to the United States Army Court of Criminal Appeals for automatic review under Article 66(b)(1), UCMJ, 10 U.S.C. § 866(b)(1) (2000). The Court of Criminal Appeals affirmed the guilty findings but, for reasons more fully outlined below, reassessed the sentence by affirming the dishonorable discharge and the total forfeitures, but only 19 of the 20 months confinement. United States v. Fagan, 58 M.J. 534, 539 (A. Ct. Crim. App. 2003).

The Judge Advocate General of the Army certified the case to this Court for review of the following issues[1]:

> I.    WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL
>       APPEALS ERRED IN CONCLUDING THAT THE SIX PRINCIPLES LAID

---

[1] This case was certified under the provisions of Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2000) and Rules 4 and 18 of this Court's Rules of Practice and Procedure.

2

OUT IN <u>UNITED STATES V. GINN</u>, 47 M.J. 236 (1997), PROVIDE THE PROPER DECISIONAL FRAMEWORK FOR ANALYZING ANY ISSUE RAISED IN A POST-TRIAL AFFIDAVIT, INCLUDING ISSUES RAISED UNDER <u>UNITED STATES V. GROSTEFON</u>, 12 M.J. 431 (C.M.A. 1982)?

II.  WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN CONCLUDING THAT THIS COURT'S DECISION IN <u>UNITED STATES V. GINN</u>, 47 M.J. 236 (1997), PRECLUDED THAT COURT FROM CONSIDERING THE GOVERNMENT AFFIDAVITS THAT FACTUALLY CONFLICTED WITH APPELLANT'S POST-TRIAL AFFIDAVITS AND FROM RESOLVING THE ISSUE IN THE GOVERNMENT'S FAVOR WITHOUT ORDERING A HEARING PURSUANT TO THIS COURT'S DECISION IN <u>UNITED STATES V. DUBAY</u>, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967)?

III. WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED IN CONCLUDING THAT IT HAD THE AUTHORITY TO GRANT APPROPRIATE RELIEF UNDER THIS COURT'S DECISION IN <u>UNITED STATES V. WHEELUS</u>, 49 M.J. 283 (1998), WHEN THE COURT ADMITTED GOVERNMENT AFFIDAVITS SPECIFICALLY REBUTTING APPELLANT'S POST-TRIAL AFFIDAVITS THAT MADE FACTUAL ASSERTIONS OF CRUEL AND UNUSUAL PUNISHMENT?

We hold that the Court of Criminal Appeals properly identified and applied <u>United States v. Ginn</u>, 47 M.J. 236 (C.A.A.F. 1997) as the decisional framework for addressing Fagan's claim of cruel and unusual punishment.  We further hold that the Court of Criminal Appeals erred in granting sentence relief to Fagan in lieu of ordering further proceedings under <u>United States v. DuBay</u>, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

BACKGROUND

At the conclusion of his trial in October of 2000, Fagan began serving his confinement at the United States Army Confinement Facility, Europe (USACFE) in Mannheim, Germany.  In January of 2001, he was transferred from USACFE to the Regional

Confinement Facility at Fort Knox, Kentucky, to finish serving the balance of his sentence.

As part of his appeal to the Court of Criminal Appeals, Fagan asserted that, while confined at USACFE, he had been subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 55, UCMJ, 10 U.S.C. § 855 (2000). In support of his claim, he submitted an affidavit to the Court of Criminal Appeals asserting that he was "repeatedly subjected to physical abuse" by a certain guard (SGT D) who conducted "overly aggressive frisks" when Fagan was leaving the dining area. He indicated that, on approximately five occasions, SGT D "forcefully took his hand up the inside of [Fagan's] groin area and, what can described as similar to a karate chop, . . . would use the side of his hand to slap [Fagan's] testicle area."

He also indicated that, on approximately five occasions, SGT D would, "using two hands, hold the waistband of [Fagan's] pants, tugging and yanking [his] pants in an upward motion so that [his] underwear and pants seams would forcibly be tucked up into [his] testicles and between [his] buttocks." According to his affidavit, these instances caused Fagan excruciating pain that lasted several minutes. Fagan alleged that he did not report these instances of abuse because of fear of retaliation

4

based on his observation of "repercussions" suffered by other inmates who had made reports against guards.

In addition to his own affidavit, Fagan submitted affidavits from eight other inmates who had been confined at USACFE well before Fagan's arrival there, primarily between March and October 1999. The eight affidavits contained "nearly identical" allegations of mistreatment by SGT D and had been previously considered by the Court of Criminal Appeals in another proceeding. Fagan, 58 M.J. at 535 n.2 (describing affidavits submitted in United States v. Kinsch, 54 M.J. 641 (A. Ct. Crim. App. 2000)).

In response to Fagan's claim and submissions, the Government submitted affidavits from SGT D and MAJ Suskie, the commander at USACFE during the period of time that Fagan's mistreatment was alleged to have occurred. In his affidavit, SGT D categorically denied any specific recollection of Fagan and any abusive activity towards any inmate during frisk searches or "pat down" procedures. MAJ Suskie also denied any recollection of Fagan and any awareness of SGT D having aggressively frisked inmates.

The Court of Criminal Appeals turned to the framework of United States v. Ginn, 47 M.J. 236 (C.A.A.F. 1997) to address Fagan's claim of cruel and unusual punishment. Fagan, 58 M.J. at 536. While expressing dissatisfaction with that framework,

United States v. Fagan, No. 03-5002/AR

the court ultimately concluded that "the clear mandate" in Ginn would require additional factfinding regarding Fagan's claim under the procedures set forth in DuBay. Rather than order such proceedings, however, the court elected to "moot the issue" by granting sentence relief under United States v. Wheelus, 49 M.J. 283 (C.A.A.F. 1998) and reduced Fagan's confinement from 20 months to 19 months. Id. at 538.

The Court of Criminal Appeals then went on to characterize the interplay between Ginn and Wheelus as "far from clear" and took "the unusual step" of recommending that the Judge Advocate General send the case to this Court for review of the issues outlined above. Id. All three issues involve questions of law and we address them de novo. United States v. Sales, 56 M.J. 255, 258 (C.A.A.F. 2002)(reviewing de novo the issue of whether lower court properly applied Ginn principles)

DISCUSSION

A.    The Ginn Framework

This case involves the manner in which the military justice system deals with "collateral" claims. Fagan's post-trial claim of cruel and unusual punishment is "collateral" in the most classic sense -- it has nothing to do with his guilt or innocence of the crimes of which he stands convicted. See United States v. Dykes, 38 M.J. 270, 272 (C.A.A.F.

6

1993)(collateral claim is one which does not go directly to the issue of the guilt or innocence of accused).

In the realm of state and federal criminal law these claims are typically raised through a separate post-conviction proceeding where evidentiary hearings are held.  Judges or magistrates make factual findings and conclusions of law that an appellate court can later review and consider.  United States v. Polk, 32 M.J. 150, 152 (C.M.A. 1991).  In the military justice system, however, there is no separate procedural mechanism available for raising and litigating these claims.  Rather, they typically present themselves in the form of affidavits or unsworn allegations submitted as part of the direct appeal process.  Id.

In light of that reality, this Court "long ago recognized" that resolution of these post-trial claims requires a procedure by which the Courts of Criminal Appeals, as well as this Court, may expand the record of trial where appropriate through an evidentiary hearing.  Dykes, 38 M.J. at 272.  The origin of that process is found in DuBay, where we remanded that case for a fact-finding hearing on post-trial claims of unlawful command influence.  The so-called "DuBay hearing" has since become a well-accepted procedural tool for addressing a wide range of post-trial collateral issues.  See e.g., United States v. Mack, 58 M.J. 413, 415 (C.A.A.F. 2003)(question of whether certain

members were properly detailed to court-martial); United States v. Baker, 58 M.J. 380, 387 (C.A.A.F. 2003)(ineffective assistance of counsel claim); United States v. Hurn, 55 M.J. 446, 450 (C.A.A.F. 2001)(claim of racial discrimination in exercise of peremptory challenge).

Our decision in Ginn simply addresses the threshold aspect of the DuBay process. Specifically, it focuses on the circumstances under which a DuBay hearing is required to resolve a post-trial claim that is framed by conflicting affidavits. We recognized in Ginn that Article 66(c) does not authorize a Court of Criminal Appeals to decide disputed questions of material fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties. Ginn, 47 M.J. at 243.

We also recognized, however, that a post-trial evidentiary hearing is not required in every case simply because an affidavit is submitted by an appellant. Id. at 248; see also United States v. Guthrie, 53 M.J. 103, 105 (C.A.A.F. 2000)(mere submission of an affidavit by an appellant does not trigger the need for a post-trial evidentiary hearing); Dykes, 38 M.J. at 273 (cautioning military law practitioners that mere submission of post-trial affidavits does not usually require an evidentiary hearing in order to resolve a post-trial collateral claim). In the context in which Ginn was presented, i.e., an ineffective

8

assistance of counsel claim, we outlined the following

principles for determining when a factfinding DuBay hearing is

required:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

> Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

> Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

> Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met.  In such circumstances the court must remand the case to the trial level for a DuBay proceeding.  During appellate review of the DuBay proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

United States v. Fagan, No. 03-5002/AR

Ginn, 47 M.J. at 248. The first two issues presented to this Court by the Judge Advocate General involve the application of that framework to Fagan's post-trial claim of cruel and unusual punishment.

B.    Application of the Ginn Framework

The Court of Criminal Appeals was correct in identifying Ginn as the appropriate framework for addressing Fagan's claim. While Ginn was decided in the context of an ineffective assistance of counsel claim, its principles are applicable to a broader range of affidavit-based, post-trial collateral claims. See e.g., Hurn, 55 M.J. at 449 (affidavit-based uncertainties regarding claim of racial discrimination in exercise of peremptory challenge); United States v. Sherman, 51 M.J. 73, 75-76 (C.A.A.F. 1999)(affidavit-based fact question as to existence of sub rosa agreement between counsel).

Contrary to the assessment of the Court of Criminal Appeals, however, there are no "problems" presented by the Ginn framework that are "compounded" by our decision in United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982).[2]  Fagan, 58 M.J. at 537-38.  Our decision in Grostefon simply prescribed a "rule of practice" which requires, at a minimum, that when an accused

---

[2] While this case does not involve any Grostefon claims, the Court of Criminal Appeals discussed the problems they perceived to be aggregated by Grostefon under a Ginn analysis. We therefore chose to clarify this issue.

10

specifies any error in his request for appellate representation or in some other form, the appellate defense counsel will invite the attention of the Court of Criminal Appeals to those issues. That court will review those issues and specifically acknowledge that it has considered and disposed of them. United States v. Knight, 15 M.J. 202, 204 (C.M.A. 1983)(characterizing Grostefon).

The linchpin of the Ginn framework is the recognition that a Court of Criminal Appeals' factfinding authority under Article 66(c) does not extend to deciding disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties. Ginn, 47 M.J. at 243. There is nothing inherent in the Grostefon procedure that amplifies, restricts or even impacts upon Article 66(c) authority in the context of affidavit-based post-trial claims, which is the context in which Ginn arises. The fact that these claims may be assigned as error by counsel or raised by an appellant under Grostefon has no impact on the Ginn analysis.

We now turn to the Court of Criminal Appeals' application of the Ginn framework to Fagan's claim. The first Ginn factor looks at whether the facts alleged in the affidavit, if true, would result in relief. Ginn, 47 M.J. at 248. If the facts

sworn to by Fagan in his affidavit are taken as true, they could result in relief.

The second Ginn factor considers whether the affidavit sets forth speculative or conclusory observations rather than specific facts. Fagan's affidavit and the others he filed in support of his claim are fact specific and his claim cannot be rejected on that basis.

The third Ginn factor involves the situation where the facts in the affidavit are either not contested by the Government or agreed to by the Government. The facts material to Fagan's treatment at USACFE have been directly contested by the Government's counter-affidavits and Fagan's assertions cannot be disposed of as a legal claim based on uncontroverted facts. Id.

Under the fourth Ginn factor, if the affidavit is factually adequate on its face, but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, a hearing is not necessary. Id. This factor requires an assessment of that portion of "the appellate filings and the record as a whole" apart from any conflicting affidavits and a determination as to whether that broader framework "compellingly demonstrates" the improbability of the factual assertions underlying the claim. As Fagan's claim relates to events that occurred after trial, there is nothing in the present record of

12

trial to "compellingly demonstrate" the improbability of his assertions. The only matters in the "appellate filings" are his affidavit-based assertions, the affidavits from other inmates at USACFE and the opposing Government affidavits. In this case it is not possible to conclude that the Government's affidavits "compellingly demonstrate" the improbability of the assertions made in the affidavits submitted by Fagan without engaging in precisely the sort of appellate fact-finding that we rejected in Ginn.[3]

While the fifth Ginn factor is articulated in the specific context of an ineffective assistance of counsel claim, the Ginn framework applies outside of that specific context. From that more general perspective, the fifth factor refers to matters within the record of a guilty plea that contradict the assertions made in support of the post-trial claim. Id. at 248. While Fagan entered guilty pleas to his offenses, his claim relates to matters that allegedly occurred well after his trial and his entry of those guilty pleas. Accordingly, they shed no light on the matter.

---

[3] We also note that the appellate filings before the Court of Criminal Appeals drew that court's attention to its earlier dispositions in a number of cases involving allegations against SGT D by other prisoner affiants. Those earlier dispositions included factual determinations that SGT D had engaged in the same misconduct that Fagan now alleges, which makes it difficult to now view the present record as "compellingly demonstrating" the improbability of those assertions.

13

United States v. Fagan, No. 03-5002/AR

As the Court of Criminal Appeals properly recognized, Fagan's claim of cruel and unusual punishment resides in the sixth and final Ginn category and his case must be remanded to the trial level for a DuBay hearing.

A DuBay hearing is not required here simply because Fagan filed an affidavit -- the mere submission of an affidavit does not trigger the need for a post-trial evidentiary hearing. Guthrie, 53 M.J. at 105. Nor is it the mere filing of responsive affidavits from the Government that triggers the requirement for a DuBay hearing. The Ginn framework requires a DuBay hearing only if the opposing affidavits raise a fact dispute that is "material" to the resolution of the post-trial claim and the claim cannot be otherwise resolved through the application of the five Ginn factors. Ginn, 47 M.J. at 244-45; see also United States v. Murphy, 50 M.J. 4, 11 (C.A.A.F. 1998)(recognized that Ginn condemned the resolution of disputes of material fact based on mere affidavits.)

In the present case, it is the inapplicability of any of the five Ginn factors and the presence of affidavits that raise material fact disputes concerning Fagan's claim that require a DuBay hearing. We turn now to the issue of whether the court erred in not directing those further proceedings.

C. Application of Wheelus

United States v. Fagan, No. 03-5002/AR

After properly concluding that the "clear mandate" of <u>Ginn</u> would require a <u>DuBay</u> hearing in this case, the Court of Criminal Appeals went on to conclude that this mandate was "in conflict" with its "broad power to moot claims of prejudice" under <u>United States v. Wheelus</u>, 49 M.J. 283 (C.A.A.F. 1998). <u>Fagan</u>, 58 M.J. at 538. Rather than order a <u>DuBay</u> hearing under <u>Ginn</u>, the court elected to simply grant sentence relief to Fagan "under <u>Wheelus</u>." <u>Id.</u>

As with its misperception of a "problem" created by <u>Ginn</u> and <u>Grostefon</u>, the Court of Criminal Appeals similarly perceived a "conflict" between <u>Ginn</u> and <u>Wheelus</u> where none exists. The central principles of these two cases are completely independent of one another.

The "broad power to moot claims of prejudice" as referred to in the context of <u>Wheelus</u> is a remedial tool available to address acknowledged post-trial processing errors. In <u>Wheelus</u>, the Government conceded that the staff judge advocate did not fulfill his obligation to inform the convening authority of certain pretrial restraint matters. <u>Wheelus</u>, 49 M.J. at 285. While noting that appellate courts do not have clemency powers per se, the Court in <u>Wheelus</u> noted that they do have

> broad power to moot claims of prejudice by "affirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

15

United States v. Fagan, No. 03-5002/AR

Id. at 288 (quoting Article 66(c)). The Court went on to cite United States v. Cook, 46 M.J. 37 (C.A.A.F. 1997) as an example of this "broad power", where the Government failed to afford an accused the opportunity to respond to "new matter" in the staff judge advocate recommendation. There the Court of Criminal Appeals ordered a sentence reduction rather than remand the case to the convening authority for a new recommendation and action.

The exercise of the "broad power" referred to in Wheelus flowed from the existence of an acknowledged legal error or deficiency in the post-trial review process. It is not a "broad power to moot claims of prejudice" in the absence of an acknowledged legal error or deficiency, nor is it a mechanism to "moot claims" as an alternative to ascertaining whether a legal error or deficiency exists in the first place.

In terms of Fagan's claim, he may be entitled to relief if he did in fact suffer a violation of the rights guaranteed him by the Eighth Amendment and Article 55. However "broad" it may be, the "power" referred to in Wheelus does not vest the Court of Criminal Appeals with authority to eliminate that determination and move directly to granting sentence relief to Fagan. Rather, a threshold determination of a proper factual and legal basis for Fagan's claim must be established before any entitlement to relief might arise.

16

United States v. Fagan, No. 03-5002/AR

As Fagan's claim is post-trial, collateral and affidavit-based, Ginn is the appropriate threshold framework under which the claim needs to be evaluated.  No post-trial collateral error or deficiency has been acknowledged and Wheelus does not come into play until, and unless, that acknowledgement is made.  The Court of Criminal Appeals erred in relying on Wheelus as a basis for granting sentence relief to Fagan in lieu of ordering a DuBay hearing.

## CONCLUSION

We answer the first and second issues directed to us for review by the Judge Advocate General in the negative and answer the third issue in the affirmative.  The decision of the United States Army Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Army for submission to a convening authority for a DuBay hearing on Fagan's claim of cruel and unusual punishment.  The military judge at such hearing shall make findings of fact and conclusions of law and then return the record of trial to the Court of Criminal Appeals for further review under Article 66(c).  Thereafter, Article 67 shall apply.

17