# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39355**

————————————

**UNITED STATES**
*Appellee*

v.

**Corey A. KUHSE**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 November 2018

————————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 6 months, and reduction to E-1. Sentence adjudged 20 June 2017 by GCM convened at Whiteman Air Force Base, Missouri.

*For Appellant:* Major Patrick J. Hughes, USAF; Captain Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

LEWIS, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of willful dereliction of duty by providing

alcohol to a minor and three specifications of sexual assault of a child, in violation of Articles 92 and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920b.[1] All offenses involve CM, a 15-year-old female. The Article 120b offenses included Appellant penetrating CM's vulva with his penis on divers occasions, her mouth with his penis on divers occasions, and her vulva with his tongue on one occasion. The military judge sentenced Appellant to a dishonorable discharge, six months of confinement, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises two issues for our consideration on appeal: (1) whether his convictions are legally and factually sufficient; and (2) whether the conditions of his post-trial confinement warrant relief. We find the evidence legally and factually insufficient with respect to the Article 120b offenses involving penetration of CM's mouth with Appellant's penis and penetration of her vulva with his tongue, which we set aside and dismiss. Finding no other prejudicial error, we affirm the remaining findings and reassess the sentence to a dishonorable discharge, confinement for five months, and reduction to the grade of E-1.

## I. BACKGROUND

Appellant first met CM through an online dating application in late May 2016. CM's online profile showed her age as 20 years. At the time, CM and her 11-month-old son were staying at the home of CM's mother's best friend, DC. Within days of meeting online, Appellant and CM decided to meet in person at DC's home. Appellant and CM had sexual intercourse the first day they met in person at DC's house.

After Appellant left DC's house, DC learned that Appellant was 21 years old. DC asked whether CM told Appellant she was 15 years old. CM admitted that she lied about her age so DC insisted CM call Appellant on the phone and reveal her true age. DC listened to the call on speakerphone so she could be sure Appellant knew the truth. When Appellant learned CM was only 15 years old, after a pause, he replied "okay." CM asked Appellant whether it was going to be a problem. Appellant stated, "We will talk about it later."

Instead of ceasing his relationship with CM, by 9 June 2016, CM and her 11-month-old son temporarily moved into Appellant's apartment in Warrensburg, Missouri. Appellant was already roommates with another couple, MB

---

[1] Appellant was acquitted of one specification of obstruction of justice, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

and MO. MB and MO thought CM and her son would only stay at the apartment for a weekend until CM could get a ride to her father's house in Kansas City, Missouri. CM told the roommates that she was 20 years old.

The same day CM began staying with Appellant, he obtained a six-pill prescription for Viagra.[2] Over the next two weeks, Appellant's two roommates heard sexual noises, such as moaning from CM and banging on the wall, emanating from Appellant's room. The noises were so loud and repeated, MB could not concentrate on her studies. MB and MO relocated to an empty bedroom, further away from Appellant's room, to get away from the noise generated by Appellant and CM.

Also, during this same two-week period, MO witnessed CM drinking a Mike's Hard Lemonade in front of Appellant during dinner. At trial, MO testified Appellant provided CM with the alcoholic beverage.

Tensions in Appellant's household worsened when MB thought CM stole some of her makeup. CM denied it, and the two began arguing on social media. A friend of MB saw one of the posts and informed MB that CM's best friend was only 14 years old. MB began searching online for information about CM and quickly discovered CM was 15 years old. MB and MO called the Warrensburg police on 24 June 2016.

When two Warrensburg police officers arrived at the apartment, MB and MO let them in and pointed them to Appellant's bedroom door. Appellant answered his door wearing only his boxer shorts. CM was asleep in the bed wearing shorts and a bra. The police separated Appellant and CM for interviews. After waiving his *Miranda*[3] rights, Appellant initially lied about CM's age and denied having sex with her. The police officer told Appellant to stop lying as he already knew CM was 15 years old, and subsequently arrested him for statutory rape.

While at the police station, Appellant admitted having sexual intercourse with CM two or three times after he knew she was 15 years old. He also admitted that he did not wear a condom when he had sexual intercourse with CM. Two Warrensburg detectives conducted a second interview of Appellant on 27 June 2016. Appellant again admitted having vaginal intercourse with CM after he knew she was 15 years old. Later that day, during a search of Appellant's

---

[2] Viagra is the brand name for the medication Sildenafil. A pharmacist who testified at Appellant's trial stated that medication is prescribed at Whiteman Air Force Base to treat only one condition, erectile dysfunction.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966) (a person subject to custodial interrogation must be given notice of rights to silence and to representation by counsel).

apartment, Appellant admitted providing alcohol to CM. Eventually, the Air Force exercised its concurrent jurisdiction to prosecute Appellant.

At trial, CM testified she had sexual intercourse with Appellant a few times after he knew she was 15 years old. She explicitly testified that Appellant's penis penetrated her vagina. When asked about oral sex, CM did not remember Appellant performing oral sex on her at all. She did recall performing oral sex on him, and stated this happened both before and after she told him her true age. CM was never asked to describe whether the "oral sex" she performed on Appellant involved penetration of her mouth by his penis.

Detective MF testified to admissions made by Appellant during the second interview. Detective MF recalled Appellant telling him that CM "performed oral sex on [Appellant] twice, and [Appellant] performed oral sex on her once after he knew that she was 15 in Warrensburg." Detective TF, who was also present for the second interview, testified similarly that Appellant admitted CM "performed oral sex on [Appellant] a couple of times and [Appellant] performed it on her once . . . [i]n his apartment, in Warrensburg." Neither Detective MF nor Detective TF were asked during their testimony to describe whether the "oral sex" involved penetration.[4]

## II.   DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Additional Background

Appellant asserts the evidence is legally and factually insufficient for all specifications of which he was convicted.[5] First, Appellant personally challenges the Article 120b, UCMJ, conviction for penetrating CM's vulva with his penis. Appellant invites us to consider the lack of physical evidence and to look at "inconsistencies and biases in the adverse testimony against him . . . pertaining to his roommates." We disagree and find this specification legally and factually sufficient.

---

[4] The record of trial does not provide insight as to why the Prosecution did not have the witnesses elaborate on the term "oral sex" when they did so for the term "sexual intercourse." Appellate Exhibit II, the Warrensburg police report of Detective TF, contains further details on Appellant's descriptions of the oral sex. For example, the report clarifies that CM "suck[ed]" Appellant's penis and Appellant "lick[ed]" CM's vagina.

[5] Appellant personally asserted the error with respect to the legal and factual sufficiency of the specifications involving penetrating CM's vulva with his penis and providing her alcohol pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Through his counsel, Appellant argues the testimony that "oral sex" occurred, by itself, is insufficient to prove he violated Article 120b, UCMJ, by penetrating CM's mouth with his penis and penetrating CM's vulva with his tongue. We agree and detail our reasoning below for finding both of these specifications legally and factually insufficient.

Finally, Appellant personally challenges his willful dereliction of duty conviction for providing alcohol to a minor. Appellant asserts there was "zero proof" he provided alcohol to CM other than he let CM in his apartment where "3 adults over age 21 lived and drank responsibly." We disagree and find this specification legally and factual sufficient.

**2. Law**

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted).

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Importantly, "[t]he term reasonable doubt . . . does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)). "In applying this test, 'we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution.'" *Id.* (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)) (additional citation omitted).

Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *Id.* (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A 1993)). "The test for a factual sufficiency review . . . is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, *the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt.*'" *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (quoting *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)); *see also Turner*, 25 M.J. at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). Just as with legal sufficiency, "[t]he term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *Lips*, 22 M.J. at 684).

Testimony describing that "oral sex" occurred does not, per se, prove penetration for the offense of sodomy under Article 125, UCMJ. *United States v. Powell,* 40 M.J. 768, 770 (A.F.C.M.R. 1994); *United States v. Hansen,* 36 M.J. 599, 608 (A.F.C.M.R. 1992).

### 3. Sexual Assault of a Child

Each of Appellant's convictions for sexual assault of a child required proof of three elements: (1) Appellant committed a sexual act upon CM; (2) at the time of the sexual act, CM had attained the age of 12 years, but had not attained the age of 16 years; and (3) the sexual act was done with the intent to satisfy his sexual desire.[6] *See Manual for Courts-Martial, United States* (2016 ed.) *(MCM)*, pt. IV, ¶ 45b.b.(3).

The sexual act charged in the first specification required proof Appellant's penis contacted CM's vulva, on divers occasions. *See id.* ¶ 45b.b.(3)(a). Contact occurs upon penetration, however slight. Articles 120b(h)(1) and 120(g)(1)(A), UCMJ, 10 U.S.C. §§ 920b(h)(1), 920(g)(1)(A). The Government presented very strong evidence for this specification. CM testified that Appellant penetrated her vagina with his penis, a few times, after he knew she was 15 years old. Appellant admitted to multiple members of the Warrensburg Police Department that he had sexual intercourse with CM after he knew she was 15 years old. Our review of the record of trial leaves us with no doubt Appellant intended to satisfy his sexual desires each time he committed this offense. We considered Appellant's claims that a lack of physical evidence and biases of his roommates affect the legal and factual sufficiency of this specification. We find Appellant's claims unpersuasive considering the compelling testimony of CM, DC, and the admissions of Appellant to multiple members of the Warrensburg Police Department. Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence is legally sufficient to support Appellant's conviction for sexual assault of a child by penetrating CM's vulva with his penis. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt of this offense of sexual assault of a child beyond a reasonable doubt. *See Turner*, 25 M.J. at 325.

---

[6] The Government included this element for all Article 120b, UCMJ, specifications even though an intent element was only required for the specification involving penetration of CM's vulva with Appellant's tongue. *See MCM*, pt. IV, ¶ 45b.b.(3)(b). Also, the Government incorrectly used the term "satisfy" instead of "gratify." Appellant did not raise this discrepancy at trial or on appeal. As we find the specification of penetration of CM's vulva with Appellant's tongue legally and factually insufficient, we do not address whether there was any error when the Government charged the word "satisfy" instead of "gratify."

Appellant's conviction under this specification is therefore both legally and factually sufficient.

The sexual act charged in the second specification required proof that Appellant contacted CM's mouth with his penis, on divers occasions. *See MCM*, pt. IV, ¶ 45b.b.(3)(a). As noted above, contact occurs upon penetration, however slight. Articles 120b(h)(1) and 120(g)(1)(A), UCMJ, 10 U.S.C. §§ 920b(h)(1), 920(g)(1)(A). CM testified that she performed oral sex on Appellant both before and after she told him her true age. CM was not asked whether she performed oral sex multiple times on Appellant after he knew she was 15 years old. She was also never asked explicitly whether Appellant penetrated her mouth with his penis, and she provided no further elaboration as to what oral sex meant to her.

We previously found convictions for sodomy both legally and factually insufficient when the only evidence was testimony that "oral sex" occurred. *Powell,* 40 M.J. at 770; *Hansen*, 36 M.J. at 608. As recently as 2016, we cautioned counsel, "[W]e can speculate as to what [the witness] meant by 'oral sex;' however, criminal convictions are made of stronger stuff than guesswork." *United States v. Rodriguez*, No. ACM 38519, 2016 CCA LEXIS 416, at *33 (A.F. Ct. Crim. App. 13 Jul. 2016) (unpub. op.) (alterations in original) (citation omitted). While Appellant's conviction is under Article 120b, UCMJ, not the now repealed Article 125, UCMJ, the essential element of penetration, however slight, is required for both UCMJ articles. Without further clarification by the witnesses of the term "oral sex," we find this specification, Specification 2 of the Charge,[7] legally and factually insufficient.

The sexual act charged in the third specification required proof that Appellant penetrated, however slightly, CM's vulva with his tongue. CM testified she did not remember if Appellant ever performed oral sex on her. Detective MF and Detective TF testified that Appellant admitted performing "oral sex" on CM once after he knew she was 15 years old, without further elaboration. Applying the case law described above, considering the failure of the Prosecution to present evidence of penetration, and CM's lack of memory of this offense, we find this specification, Specification 3 of the Charge, legally and factually insufficient.

---

[7] The Charge in this case, as originally preferred, included the Article 120b specifications involving CM. Additional Charge I and Additional Charge II were later preferred and included the Article 92 dereliction of duty offense for providing alcohol to CM and the Article 134 offense alleging obstruction of justice, respectively. All charges and specifications were referred to a single court-martial.

#### 4. Providing Alcohol to a Minor

Appellant's conviction of willful dereliction of duty for providing alcohol to a minor required proof of the following elements: (1) Appellant had a certain prescribed duty, that is: to refrain from providing alcohol to CM, an individual under the age of 21 years; (2) Appellant actually knew of the assigned duty; and (3) Appellant was willfully derelict in the performance of that duty by providing alcohol to CM. *See MCM*, pt. IV, ¶ 16.b.(3).While Appellant asserts there is "zero proof" of this offense, we find that the Prosecution proved each element of the offense beyond a reasonable doubt. Appellant's roommate, MO, witnessed CM drinking alcohol provided by Appellant. During the search of Appellant's house, Appellant admitted to providing alcohol to CM. Appellant's Flight Chief, Senior Master Sergeant (SMSgt) JB, testified that Appellant attended numerous Friday briefings where he was told not to provide alcohol to anybody under the age of 21 years. SMSgt JB also observed 30 empty alcohol bottles during the search of Appellant's house.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence is legally sufficient to support Appellant's conviction for willful dereliction of duty for providing alcohol to a minor, CM, beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt of willful dereliction of duty for providing alcohol to a minor, beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction for Additional Charge I and its Specification is, therefore, both legally and factually sufficient.

### B. Post-trial Confinement Conditions[8]

#### 1. Additional Background

In support of his appeal, Appellant submitted a six-page post-trial declaration to the court. One paragraph addresses his post-trial confinement conditions at Whiteman Air Force Base (AFB). Appellant's argument is three-fold: (1) the lack of resources and staff hindered the goals of rehabilitation because there was no education to obtain and the work program was near non-existent; (2) it took three to four weeks to obtain an appointment to the medical clinic which presented problems for medical conditions related to Appellant's head, eyes, and knee; and (3) Appellant was often neglected and forgotten, including going to church on Sunday. Appellant did not raise any concerns with his conditions of post-trial confinement using the prisoner grievance system or during the clemency process. Additionally, the record of trial contains no evidence that

---

[8] This issue is raised personally by Appellant. *Grostefon*, 12 M.J. 431.

Appellant filed an Article 138, UCMJ, 10 U.S.C. § 938, complaint. We first address the threshold issue of whether an additional fact finding hearing is required. After concluding a fact finding hearing is unnecessary, we will then turn to applicable law and analysis of Appellant's underlying claims.

### 2. Additional Fact Finding Hearing

A post-trial evidentiary hearing is not required in every case simply because an affidavit is submitted by an appellant. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Instead, we apply the principles set out by the Court of Appeals for the Armed Forces (CAAF) to determine when a fact-finding hearing is required. *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004).

Three of the principles outlined by the CAAF apply to Appellant's case:

> (1) [I]f the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.
>
> (2) [I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.
>
> . . . .
>
> (3) [I]f the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

*Id.* at 241–42 (quoting *Ginn*, 47 M.J. at 248).

Appellant first claims the "lack of resources and staff hindered [the] goals of rehabilitation because there was no education to obtain and the work program was near inexistent [sic]." We find Appellant's conclusions about the lack of resources and staff, and the purported impact on education and work programs to be speculative and conclusory observations. We reject them on that basis. *See Fagan*, 59 M.J. at 242; *Ginn*, 47 M.J. at 248.

Appellant's declaration next argues it would take a minimum of "3 to 4 weeks to obtain an appointment to the medical clinic which was a problem because of conditions . . . involving [Appellant's] head, eyes, and knee." Appellant does not describe any medical problems he suffered from delayed medical appointments. The record of trial includes a Department of Defense Form 2707, *Confinement Order* (Mar. 2013) [DD Form 2707], which shows Appellant was found medically fit for confinement. The DD Form 2707 is signed by Staff Sergeant (SSgt) AZ, Non-Commissioned Officer in Charge of Corrections. We granted the Government's motion to attach a declaration of SSgt AZ, which

confirmed actual knowledge of Appellant's medical concerns about his head, eyes, and knee. SSgt AZ's declaration avers he worked with Appellant's unit to facilitate his medical appointments, the first of which occurred three days after Appellant was confined. According to SSgt AZ, Appellant received his prescriptions, including eye drops, at this first appointment. We conclude that, even if the facts as asserted by Appellant are true and his medical appointments were delayed, he failed to meet his burden of establishing grounds for relief. *See Fagan*, 59 M.J. at 242.

Finally, Appellant states he was "often neglected and forgotten . . . including going to church on Sunday's [sic]." SSgt AZ provided documentation, separate from his declaration, showing Appellant requested and attended church services six times during his term of confinement. We find Appellant's declaration factually adequate, but the appellate filings and record as a whole compellingly demonstrate that Appellant was not neglected and actually attended church services six times consistent with his requests. *See id.*

**3. Law**

Appellant cites Article 12, UCMJ, 10 U.S.C. § 812, and Article 66(c), UCMJ, as grounds for relief. We disagree that Article 12, UCMJ, applies to Appellant's confinement as no foreign nationals were confined with him at Whiteman AFB. We address his claims under Article 66(c), UCMJ, after we analyze them under the Eighth Amendment[9] and Article 55, UCMJ, 10 U.S.C. § 855.

We review de novo whether the facts alleged establish cruel and unusual punishment. *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (citation omitted). Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide greater protections under [Article 55]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *Lovett*, 63 M.J. at 215 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). A violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant's] health and safety; and (3) that [an appellant]

---

[9] U.S. CONST. amend. VIII.

> "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."

*Id.* (third alteration in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

The CAAF emphasized, "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* at 471 (alterations in original) (quoting *Miller*, 46 M.J. at 250). Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and has petitioned for relief under Article 138, UCMJ. *White,* 54 M.J. at 472 (citation omitted).

### 4. Analysis

Appellant did not exhaust the prisoner-grievance system nor did he petition for relief under Article 138, UCMJ. Accordingly, we conclude that Appellant is not entitled to relief under the Eighth Amendment or Article 55, UCMJ.

We also considered whether we should exercise our authority under Article 66(c), UCMJ, to provide sentence relief for the conditions complained of by Appellant. Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact, and may therefore grant sentence relief even without finding an Eighth Amendment or Article 55, UCMJ, violation. *United States v. Gay,* 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015)*, aff'd,* 75 M.J. 264 (C.A.A.F. 2016); *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). When this court considers judicial relief under Article 66(c), UCMJ, for conditions of post-trial confinement, we have not strictly required an appellant to demonstrate that he has, absent unusual or egregious circumstances, previously exhausted administrative remedies. *See United States v. Kyc*, No. ACM S32391, 2017 CCA LEXIS 376, at *13–14 (A.F. Ct. Crim. App. 30 May 2017) (unpub. op.). We instead consider the entire record and typically give "significant weight" to an appellant's failure to seek administrative relief prior to invoking judicial intervention, while recognizing the limits of our authority. *United States v. Bailey*, No. ACM S32389, 2017 CCA LEXIS 604, at *11 (A.F. Ct. Crim. App. 11 Sep. 2017) (unpub. op.), *rev. denied*, 77 M.J. 264 (C.A.A.F. 2018).

After considering the facts and circumstances in the present case, we decline to provide sentence relief under Article 66(c), UCMJ. As this court observed in *United States v. Ferrando*,

> While we have granted sentence relief based upon conditions of post-trial confinement where a legal deficiency existed, we are not a clearing house for post-trial confinement complaints or grievances. Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ.

77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted), *rev. denied*, 77 M.J. 277 (C.A.A.F. 2018). This case does not present those very rare circumstances.

**C. Sentence Reassessment**

Having dismissed Specifications 2 and 3 of the Charge,[10] we consider whether we should reassess the sentence or return this case for a sentence rehearing. We are confident we can accurately reassess an appropriate sentence.

This court has "broad discretion" in deciding to reassess a sentence to cure error and in arriving at an appropriate reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). The CAAF has observed that courts of criminal appeals judges can modify sentences "'more expeditiously, more intelligently, and more fairly' than a new court-martial . . . ." *Id.* at 15 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)).

Pursuant to *Winckelmann*, 73 M.J. at 15–16, we use four factors to guide our determination whether to reassess a sentence when applying them to Appellant's case:

- *Dramatic changes in the penalty landscape and exposure*: As a result of dismissing Specifications 2 and 3 of the Charge, the maximum confinement was reduced from 90 years and 6 months to 30 years and 6 months. The dishonorable discharge remained a mandatory minimum punishment. The Prosecution argued that an appropriate confinement term was three years. The Prosecution did not mention the conduct in Specifications 2 and 3 of the Charge whatsoever in their sentencing argument. The military judge determined six months was an appropriate

---

[10] The Government did not request and we decline to affirm any lesser included offense. There was no discussion of lesser included offenses during the trial.

term of confinement. While this first factor weighs against reassessment, the analysis is based on the totality of the circumstances and these four factors are illustrative, not dispositive. *Id.* at 15.

- *Whether an appellant chose sentencing by members or a military judge alone*: Appellant was sentenced by a military judge alone. This factor weighs in favor of our determination that we may confidently reassess the sentence.

- *Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses*: Appellant still stands properly convicted of the most serious offense, sexual intercourse, on divers occasions, with a 15-year-old girl. The dismissed offenses and the remaining offenses involve the same victim, CM. The remaining offenses occurred during the same time period and at the same location as the dismissed offenses. This is not a case of an escalating sexual relationship that began with oral sex and progressed to sexual intercourse. Appellant and CM had sexual intercourse the first day they met. Indeed, there is no evidence that oral sex occurred separate and apart from their sexual intercourse. As such, we find the underlying conduct involving oral sex would have been relevant and admissible under Mil. R. Evid. 404(b)(2) to show Appellant's preparation for sexual intercourse with CM at his Warrensburg apartment and to show Appellant's intent to satisfy his sexual desires, as required by the charging used for the remaining Article 120b, UCMJ, offense in this case. *See United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989); Mil. R. Evid. 401, 403. Similarly, all the aggravating evidence remained admissible, including Appellant's decisions to obtain a Viagra prescription after he learned CM was 15 years old, and to have unprotected vaginal intercourse multiple times with CM, already a mother to one child. This factor weighs heaviest in our determination that we may confidently reassess Appellant's sentence.

- *Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial*: This court has ample experience with cases involving Articles 92 and 120b, UCMJ, offenses like Appellant's. Our experience informs us that we are able to reliably determine what sentence would have been imposed at trial.

Therefore, considering the facts of Appellant's case and the totality of the circumstances, we find we are able to determine that, "absent any error, the

sentence adjudged would have been of at least a certain severity . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Having so found, we reassess Appellant's sentence to a dishonorable discharge, confinement for five months, and reduction to the grade of E-1.

## III. CONCLUSION

The findings of guilty as to Specifications 2 and 3 of the Charge are **SET ASIDE** and Specifications 2 and 3 of the Charge are **DISMISSED WITH PREJUDICE**. The remaining findings and the sentence as reassessed are correct in law and fact and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the remaining findings and the reassessed sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court